EDWIN B. JONAH, Admr. in Equity, *vs.* ANDREW CLARK, et al.

Washington.    Opinion October 6, 1913.

*Administrator.    Consideration.    Equity.    Exceptions.    Mental Capacity.*
*Partnership.    Referees.    Report.    Sale.*

The bill in this case alleged that the bills of sale were obtained by fraud and
undue influence and were void, and the answer denied that the bills of
sale were obtained by fraud.

*Held:*

1.    The allegations of the bill and of the answer put in issue the title to the
vessels.

2.    The rule of reference referred the action to the determination of the
referees named, and it was the duty of the referees to decide all material
matters in issue between the parties.

3.    The award must follow the agreement of submission and must deter-
mine the questions submitted.

On exceptions by Andrew Clark.    Exceptions sustained.

This is a bill in equity brought by Edwin B. Jonah, as adminis-
trator of the goods and estate of Lewis D. Clark, against defendants,
in which the court is asked to set aside certain Bills of Sale of cer-
tain boats and an assignment made by Lewis D. Clark to Andrew
Clark and to order Andrew Clark to render an account of certain
goods and property in his hands.    This cause was referred to Hon.
William P. Whitehouse, Hon. Arno W. King and Hon. George M.
Hanson.    The report of the above named referees was offered for
acceptance in court on May 1, 1913, and objections made by Andrew
Clark.    Upon hearing before the Justice presiding, the objections
were overruled and said report ordered to be accepted.    To this
order, the defendant excepted.

The case is stated in the opinion.

*J. F. Lynch, and H. H. Gray,* for plaintiff.

*A. D. McFaul, and W. R. Pattangall,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, PHILBROOK, JJ.

HALEY, J. At the January term, 1912, of this court, held at Machias, there was pending a bill in equity wherein Edwin B. Jonah, administrator of the goods and estate of Lewis D. Clark, was plaintiff, and Andrew Clark and Judson Clark, of Eastport, were defendants. The bill alleged that Lewis D. Clark died May 19, 1909, and in his lifetime was engaged in business as a member of the co-partnership composed of said Lewis D. Clark, Andrew Clark and Judson Clark, under the firm name of L. D. Clark & Sons; that Andrew Clark and Judson Clark, as surviving partners, had been cited by the Probate Court to give bond and settle the co-partnership estate, and had neglected and failed to do so, and that thereupon the plaintiff was appointed administrator of the estate of Lewis D. Clark; that after the death of said Lewis D. Clark, said Andrew Clark and Judson Clark had conducted the co-partnership business until the filing of the bill in equity; that said co-partnership owned and used in its business certain personal property and equipment in their sardine factory, and certain boats and personal property situated outside of said factory, a large quantity of sardines, packed and ready for sale, and there was due said co-partnership large sums of money for sardines already sold, and also that there were large deposits of money in banking institutions in the name of said co-partnership, and that in December, 1908, Andrew Clark procured of Lewis D. Clark bills of sale of all his interest in the sardines of the firm of L. D. Clark & Sons; also his right and interest in and to all personal property used and occupied by said L. D. Clark & Sons; and also his right, title and interest in and to all boats and gearing connected therewith used by said L. D. Clark & Sons in the sardine business at Eastport; that when said bills of sale were executed said Lewis D. Clark had not sufficient mental capacity to execute legal conveyances of his said property; that said Lewis D. Clark was unduly influenced by said Andrew to make the conveyances; that said conveyances were given without sufficient and valuable consideration, and procured by the said Andrew Clark in fraud of said Lewis D. Clark, his estate and his legal representative, and asked that the conveyances be declared null and void, and that said property be reconveyed to complainant as administrator,

and that the defendants be ordered to give an account of said co-partnership property, funds, and rights and credits on said nineteenth day of May, 1909, and of the business earnings and income of the said copartnership from the death of said Lewis.

An answer to the bill was filed, denying that said Lewis D. Clark had not sufficient mental capacity to make legal conveyances of said property; that he was unduly influenced by said Andrew to make said conveyances, and alleged that said conveyances were made for a good and valid consideration; that said conveyances were not procured by fraud, and alleged that on the first day of December, 1909, said Lewis D. Clark retired from said firm and sold all his interest in said firm to said Andrew Clark; that said Lewis had no interest in said firm from that date, and that, as said Lewis had no interest in said co-partnership, it was not necessary for them to account. At the said January term of court the action was referred to three referees, and a rule of reference issued. The referees made their report, and the report was offered for acceptance or rejection at the April term, 1913, for Washington County, at which time Andrew Clark objected to the acceptance of the report. The Justice ordered that the report be accepted and allowed exceptions to his ruling, if exceptions were allowable, and the case is before the court upon the exceptions. Several reasons are urged in argument in support of the exceptions. It is only necessary to consider one.

It is urged that the referees did not decide all matters submitted to them. The referees decided in their report the title to the co-partnership property, and that the defendants should account for the co-partnership transactions, and for the property belonging to the co-partnership at the death of said Lewis D., and give an account of the business earnings and income of the said co-partnership from the death of Lewis D. Clark on the nineteenth of May, 1909, but did not decide as to the title to the boats and gearing. The bills of sale of the two vessels, one the "Sasia B" and the other the "Hulloneon," were duly recorded in the Custom House at Eastport, December 3, 1908, and the bill of complaint alleged that the bills of sale above referred to were obtained by fraud and undue influence and were void, and asked that the title to the vessels should be reconveyed to the plaintiff as the representative of Lewis D. Clark. The answer denies that the bills of sale were obtained by fraud or

undue influence, and alleges that they were given for a good, sufficient and valid consideration. The allegations of the bill and of the answer put in issue the title to the vessels. The rule of reference referred the action to the determination of the referees named; the referees did not make any report or finding as to the title of, or the allegations in the bill and answer referring to, said vessels. It was the duty of the referees to decide all material matters in issue between the parties. The case was referred to them to have the rights of the parties settled, and the title to all property in issue in the case should have been settled by the referees. Until the matters in controversy in the bill were settled, the referees had not performed the duty which the parties had agreed they should perform. It was the intention of the parties and the court that the judgment of the referees should end all controversies in issue, and to do that it was necessary to settle the title to the vessels. The parties were entitled to the judgment of the referees as to all matters in issue, and unless the referees did pass upon all the material issues raised by the bill and answer, their report was not complete; they had not performed the duties for which they had been selected, and the report should not have been accepted.

"It is undoubtedly law that the award must follow the agreement of submission. It must determine the question submitted." *Wyman* v. *Hammond,* 62 Maine, 537.

"His duty (referee) was to determine all the issues, and to report the result of his findings." *Hecker* v. *Fowler,* 69 U. S., 123.

"It is undoubtedly true that an arbitrator or referee must award on all matters submitted, if they are within the terms of the submission, and a neglect to do so will render the award void." *Fuller* v. *Wright,* 10 Vt., 512.

"We are of opinion that the judgment cannot be sustained. The referee was appointed to hear and determine all the issues in the action, and it was his duty to have disposed of the whole controversy." *Pinsker* v. *Pinsker,* 60 N. Y. Suppl., 902.

The Nineveh Fed. case No. 10276, Lowell, J., states: It is equally clear that the award which had been made cannot be accepted, it does not decide the rights of the parties, but is in its nature and on the face a mere preliminary finding,—and amounts only to an order or direction to the parties to do certain acts and

prepare certain evidence before the next hearing. The question of damages form an essential part of the submission, and both parties are entitled to a judgment of their chosen tribunal upon it, as much so as upon the preliminary point of the responsibility of the respective parties." In the above case the referees reported that the damages, cost and expense of the collision should be borne equally by the parties, that they should ascertain the damages, and if they could not agree they were to submit the proof at another hearing.

The case of *Garezynski* v. *Russell et al., 27* N. Y. Suppl., 458, was a case in which the questions involved were what interest the estate of Mrs. Russell had in the real estate mentioned in the complaint by reason of having paid a mortgage or otherwise, and how much she in fact paid toward railroad stocks and other property which stood in her name. The case was sent to a referee. The court say: "The referees report, and the judgment entered in pursuance of it, directed that these important matters shall be referred to another referee to hear and determine after the entry of an interlocutory judgment, which is, in many respects, inconsistent with such a reference. The learned referee, to whom this action was referred, instead of taking the accounting, and determining the amount of the property, if any, which came into the possession of the estate of Lucy G. Russell, for which it was liable to account to the plaintiffs, under the facts as found by him, held, as a conclusion of law, that the plaintiff was entitled to have a fair and full accounting, as stated in the demand of the complaint relating to that subject. . . . The referee should have heard and determined all the issues made by the pleadings, and if, under the proof before him, the plaintiff was entitled to an accounting, he should have taken and stated the account. It was not the intention of the parties, or of the court, that only a portion of the questions involved in the case should be determined by the referee, and that those remaining should be determined by another and different referee, to be subsequently appointed. It is obvious that the court and both parties intended that such a determination of the case should be made by the referee as would entitle the party succeeding to a final judgment in the action. We know of no authority to justify a referee in determining only a portion of the questions referred to him, and then to direct an interlocutory judgment, and that the court appoint

another referee to complete the hearing, where the whole case is referred to him by the consent of the parties. In this case, no reason is apparent why the referee could not have taken the accounting demanded in the complaint as well as another referee, to be subsequently appointed. The subject of the accounting related, not to matters which might arise in the future, so that a supplemental hearing and report might be necessary, but entirely to transactions which were past, and as to which he might well have taken an accounting. It was the duty of the referee, on the trial, to take the proof of the respective parties, take an accounting of the matters referred to, settle and determine the account upon the trial before him, and thus complete the hearing and determination of the case. His report was not only informal, but incomplete. We think it was proper for the special term to set aside the report, and send the case back to the same referee, so that a final judgment might be entered, as was plainly contemplated by the court and parties when the reference was ordered. *Maicas* v. *Leony*, 113 N. Y., 619, 20 N. E., 586. The orderly method of trying this case, as well as the rights of the defendants, under their stipulation, and the order appointing the referee, required that the whole case should be fully tried and determined by him. Therefore, the special term, instead of settling the judgment upon the report as it stood, and providing for another reference, not contemplated by the defendants, should have sent the case back to the referee, to complete the trial thereof. . . . We think that where, as in this case, all the facts which relate to the accounting existed at the time of the trial, so that the whole case can be disposed of as well, and with less expense to the parties, than before another referee, it is the duty of the referee to complete the trial, and state the account between the parties in his report, so that a final judgment may be entered thereon. It was said by Daniels, J., in *Mundorff* v. *Mundorff:* 'Ordinarily, where the whole issue is referred, it is no doubt the duty of the referee to take, state, and adjust the accounts of the parties, on the basis on which, by his decision, he may settle their rights; for, as a portion of the issues, that is included within the reference provided for.' "

From the above authorities, it would seem that the award of the referees in this case was void. They did not pass upon all questions submitted to them; the title to the two vessels and gearing were

submitted, and the bill also prayed for an accounting of the partnership affairs. The defendants denied that the partnership existed, as alleged, and denied the liability for an accounting. The referees found that the partnership did exist, and ordered the defendants to give an account of the property, funds, rights and credits belonging to the said co-partnership on the 19th of May, 1909, and to give an account of the business earnings and income of said co-partnership since the death of Lewis D. Clark on said 19th day of May, 1909, and, as stated above, it was the duty of the referees to make findings and a report that would end the case. They were the tribunal selected by the parties to pass upon all matters in issue in the bill and answer. They did not pass upon the issue of the ownership of the vessels and gearing; they did not determine the amount that was due upon an accounting of the co-partnership affairs, if the defendants were liable to account, as found by the referees. Therefore, under the above authorities, their report should not have been accepted. It was void for the reasons stated, and the ruling was subject to exceptions, because, as a matter of law, the report itself shows that no valid judgment could be entered upon it.

*Exceptions sustained.*