**William A. CALTHORPE et al.**

v.

**Ernest P. ABRAHAMSON et al.**

Supreme Judicial Court of Maine.

Argued Nov. 20, 1979.
Decided Dec. 4, 1980.

**232**

Drummond Woodsum Plimpton & Mac-Mahon, P. A., John A. Graustein (orally), Portland, for plaintiffs.

Robinson & Kriger, Robert C. Robinson (orally), Portland, for defendants.

Before McKUSICK, C. J., WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ., and ARCHIBALD, A. R. J.[1]

NICHOLS, Justice.

This boundary dispute, involving lands on Great Chebeague Island comes to us on appeal by the Defendants, Ernest P. Abrahamson, Jane S. Abrahamson, Manley A. Dyer and Fannie G. Dyer from a judgment of the Superior Court (Cumberland County) entered upon the acceptance of a referee's report pursuant to M.R.Civ.P. 53(e)(2).

We sustain the appeal.

The Plaintiffs, Joseph H. McLellan and Catherine M. McLellan, purchased their land[2] in 1954 from Mary J. James, their deed in pertinent part conveying land bounded "on the West by land of Manley A. Dyer . . . ." This description of what was actually the southerly, not the westerly, boundary has been used in all deeds in the Plaintiffs' chain–of–title since 1944.

While the Defendants, Manley Dyer and Fannie Dyer, did not acquire their land until 1934, a review of the deeds of their chain–of–title discloses that the premises of which their land is now a portion was in the nineteenth century described as a rectangular lot, approximately three rods wide, extending northwesterly from Casco Bay to the land presently occupied by Wesley Doughty. The middle portion of the tract, already conveyed out, was in 1900 conveyed to Ida Griffin, and in 1967 title to the same portion was acquired by the Defendants, Ernest P. Abrahamson and Jane S. Abrahamson.

. Although in numerous conveyances from 1864–1930 the original "rectangular" lot had been described as being three rods wide on both the coastal and inland ends, when in 1930 Eben Tozier conveyed the remainder of the rectangular lot to Alonzo Dyer he "corrected" the description to read in his deed as follows:

Beginning at the Eastern corner of land formerly owned by Stephen Bennet, now

---

1. Archibald, J., sat at argument and participated in conference. He retired prior to the preparation of this opinion in which he joins as an Active Retired Justice.

2. The Plaintiffs McLellan conveyed the upper portion of this parcel in 1972 to their daughter and son–in–law, Plaintiffs Mona A. Calthorpe and William A. Calthorpe.

owned by Sidney Doughty; thence South thirty–six (36) degrees East along an old stone wall to the seashore at a point approximately thirty–six (36) feet south-west of the side of the Casco Bay Wharf; thence northeasterly *by the shore about six (6) rods* to a bolt hole in a ledge at the Southerly corner of land by Herbert Doughty; thence North fifty–two (52) degrees west along the line of said Doughty to land of Sidney Doughty; thence South forty (40) degrees thirty (30) minutes west by said Sidney Dough-ty land to the point of beginning. Said premises are the same conveyed by Lizzie Tozier to Katie C. Westman by deed dat-ed May 1st., 1888, and recorded in Cum-berland Registry of Deeds, in Book 555, Page 238, *in which deed appears an error in description so that said lot as therein described appears to be but three (3) rods wide.* (Emphasis added).

The description of six rods wide "by the shore" continues in the chain–of–title into the Defendants Dyer.

The central issue in this controversy is whether the six–rod "correction" of the southeastern coastal boundary in 1930 also widened the opposite northwestern bound-ary from three to six rods. The resolution of this issue was critical to the determina-tion of the *common* boundary line because the Plaintiffs' land was "[b]ounded on the ... west by land of Manley A. Dyer ...."

On January 9, 1976, the Plaintiffs filed their complaint in Superior Court, seeking a declaratory judgment as to the location of the disputed boundary line. By agreement and pursuant to M.R.Civ.P. 53(b)(1), on Oc-tober 20, 1977, the case was submitted to reference.[3] Following a three day hearing the referee located a common boundary line which failed to extend the full distance between the parties' lands. No explanation was given in the report for the failure to complete the line. After overruling season-able objections by the Defendants, the Su-perior Court accepted the referee's report and entered judgment thereon.

I

At the threshold we face the issue of whether in considering this appeal we may make use of a transcript of the evidence adduced before the referee, which tran-script was not seasonably provided to the Superior Court but which has been sub-mitted to us as a part of the record on appeal.

The Defendants urge that this transcript is an essential part of the record to be considered here. On the other hand, the Plaintiffs assert that whenever parties wish to preserve their option to raise issues based upon the evidence before a referee, they must make the transcript thereof available to the Superior Court at the time that court is weighing the acceptance of that referee's report. They move to strike from the rec-ord on appeal in this case the transcript not filed in Superior Court until several months after this referee's report was accepted.

If our Court were to undertake at this point a review of the evidence before the referee, and were to ascertain in the first instance whether the referee's findings were clearly erroneous, it would rob the Superior Court of all significant participa-tion in the case. The responsibility for such a review and such a determination rests with the Superior Court.

Our rules make clear the requirement:

In cases where the reference is by agree-ment of the parties, the referee shall file with the clerk of the court the report, together with the original exhibits and together with any transcript which, at the election and expense of one or more of the parties, may be made of the pro-ceedings and of the evidence before the referee.

M.R.Civ.P. 53(e)(1).

In an earlier form, prior to February 1, 1960, this Rule *required* a transcript of pro-ceedings before a referee to be filed with

**3.** Although the parties neglected to have the Court appoint the referee upon whom they ob-viously were in agreement and who heard the case, the error was harmless, and especially so in light of our disposition of the appeal.

the court unless otherwise directed in the order of reference. As now modified, this Rule requires the filing of a transcript only *upon the request* of one or more parties.[4]

■ Not only does the party who wants a transcript prepared have the burden of seasonably requesting it, but if he objects to acceptance of the referee's report on the grounds of the insufficiency of the evidence before the referee, he has the further burden of making certain that the transcript is at the disposal of the Superior Court when it acts upon such objections to the report.

The party who is objecting to the acceptance of the referee's report has the burden of proving error by the referee. *Cunningham v. Cunningham*, Me., 314 A.2d 834, 839 (1974).

■ Lacking a transcript of the evidence before the referee neither the Superior Court to whom the report is made nor this Court on appeal has any basis for rejecting the report on the grounds of insufficiency of the evidence.[5]

■ We conclude that upon appeal we should not consider a transcript of evidence which was not before the Superior Court when it acted upon the Defendants' objections to the report. The Plaintiffs' motion to strike this transcript from the record on appeal should be granted.[6]

## II

The prime issue in the case submitted to the referee was the location of the common boundary between the land of the Plaintiffs and the land of the Defendants. From the deeds in their respective chains–of–title this common boundary must extend from some point on the shore of Casco Bay to some point on the Doughty property line.

The referee's report, however, falls short by about 100 feet of locating this boundary to its full extent. Moreover, it fails to suggest any reason for the deficiency.

■ Seasonable objections to the acceptance of a referee's report must be sustained when directed to the failure of the report to decide a submitted issue. *Chaput v. Lussier*, 131 Me. 145, 147, 159 A. 851, 852 (1932); *Jonah v. Clark*, 111 Me. 142, 145–47, 88 A. 395, 396–98 (1913); *Wyman v. Hammond*, 55 Me. 534, 537 (1868).

In *Wyman v. Hammond, supra*, adjoining lot owners submitted resolution of a disputed common boundary line to an arbitrator. Disagreeing about the awarded boundary line, the parties resubmitted the matter to another arbitrator, with instructions that the sole question was to determine where, upon the face of the earth, was the line established by the former arbitrator. The second award resulted in a new boundary line based in no part upon the former adjudication. The *Wyman* court emphasized that "the award must follow the agreement of submission . . . [and] determine the question submitted." 55 Me. at 537.

In *Jonah v. Clark, supra*, we held that the reviewing justice should not have accepted a report which failed to decide all the questions submitted to the referees, declaring:

It was the duty of the referees to decide all material matters in issue between the parties. The case was referred to them to have the rights of the parties settled, and the title to all property in issue in the case should have been settled by the referees. Until the matters in controversy in the bill were settled, the referees had

**4.** *See* 1 R. Field, V. McKusick, and L. Wroth, *Maine Civil Practice* § 53.3 (2d ed. 1970):

If either party wants a transcript of the evidence before the referee, he must arrange and pay for it if the reference is by agreement, or must see to it that the order of reference directs the preparation of a transcript if the reference is not by agreement.

**5.** For a case where the transcript of the hearing before the referee was not preserved, *see Adams v. Alley*, Me., 308 A.2d 568, 570–71 (1973).

*See also Republican Publishing Co. v. American Newspaper Guild*, 172 F.2d 943, 944 (1st Cir. 1949); 1 R. Field, V. McKusick, and L. Wroth, *Maine Civil Practice* § 53.4 (2d ed. Supp. 1977).

**6.** In view of the ultimate disposition of this appeal, this transcript of evidence may still prove useful to the court upon remand of this case for further proceedings, notwithstanding that it is inappropriate for us to consider the transcript upon this appeal.

not performed the duty which the parties had agreed they should perform. . . . [U]nless the referees did pass upon all the material issues raised by the bill and answer, their report was not complete; they had not performed the duties for which they had been selected, and the report should not have been accepted.

111 Me. at 145, 88 A. at 396–97.

 Unless the referee's report fixed the location of the entire common boundary line of the parties in the case before us, the report was fatally flawed. It should not have been accepted by the Superior Court over the objections of the Defendants. The case must be remanded to the Superior Court where, the parties having already agreed to a reference, it may be resubmitted.[7]

### III

In light of our disposition of this appeal it is unnecessary to consider the Defendants' assertion that to the extent the referee determined the common boundary it was not supported by sufficient evidence. In view of our granting of the motion to strike the transcript from the record on appeal, it is impossible for us to test the sufficiency of the evidence.

The entry will be:

Motion to strike the transcript from the record on appeal granted.

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

7. Upon remand it is anticipated that a transcript of the evidence adduced before the referee will be made available to the Superior Court. That may lead to a settlement of this cause. If it should not, it would be appropriate for the Superior Court to "recommit it with instructions" pursuant to M.R.Civ.P. 53(e)(2).