**MARJA CORPORATION**

v.

**Jayson ALLAIN, et al.**

Supreme Judicial Court of Maine.

Argued Feb. 4, 1993.

Decided April 9, 1993.

Ronald D. Bourque (orally), Bourque & Clegg, Sanford, for plaintiff.

Arthur H. Dumas (orally), Sanford, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

The plaintiff, Marja Corporation (Marja), appeals from a judgment entered in the Superior Court (York County, *Brennan, J.*) following the court's acceptance of the referee's report finding that the common boundary was established by acquiescence as alleged in the counterclaim filed by the defendants, Jayson Allain and Arline Eldridge, in response to Marja's complaint. Marja contends that the court erred in accepting the referee's report because the referee's findings are not supported by clear and convincing evidence, and the location of the boundary was not fixed with

sufficient clarity. Finding no error in the record, we affirm the judgment.

Marja's property in Sanford is abutted on the north by the property of Jayson Allain and that of Arline Eldridge. Marja is the successor in interest to Norman Hall, who inherited the property from his father, Frank Hall. Eldridge, who in 1987 sold a portion of her property to her grand nephew, Allain, acquired the land by a deed from her father, Grover Hall, the brother of Frank Hall and the uncle of Norman Hall. An old road (known as Mast Road, also known as Steep Hill Road) traverses the disputed border area of the properties, extending for about one-half mile from Route 4 to its intersection with Route 109. Allain and Eldridge both use this road to access their properties. As shown on early maps of the area, this road was originally located wholly on the land of Marja's predecessors, and the boundary with the land of Allain and Eldridge's predecessors was a straight line located north of the roadway.

In 1988, a dispute arose over the location of the boundary between the properties. Marja claimed the boundary to be at a point north of the roadway, while Allain and Eldridge claimed the roadway as the boundary. Marja filed a complaint seeking, *inter alia*, to establish its title to the disputed property. Allain and Eldridge answered and counterclaimed, alleging ownership of the disputed property by deed, adverse possession, and acquiescence.

The Superior Court (York County, *Fritzsche, J.*), by agreement of the parties, appointed a referee to find and determine "the location of the common boundary line between land owned by the ... parties." Following a hearing and a view of the area, the referee concluded that Allain and Eldridge failed to sustain their burden of proving title by deed or adverse possession, but they had established by clear and convincing evidence their title by acquiescence to all land located northerly of the northwest sideline of the

old roadway, traveled way or open area which is at least 12 feet wide at all points and currently leads generally southwesterly from the southeasterly sideline of Route 109 to the easterly side of Route 4.

Over the objections of both parties and after a hearing, the Superior Court adopted the referee's report and entered a judgment in favor of Allain and Eldridge from which Marja appeals.[1]

## I.

In *Calthorpe v. Abrahamson*, 441 A.2d 284, 289 (Me.1982) (*Calthorpe II*), we set forth the following requirements to establish a boundary by acquiescence:

(1) possession up to a visible line marked clearly by monuments, fences or the like;

(2) actual or constructive notice to the adjoining landowner of the possession;

(3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred;

(4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well served by recognizing the boundary.

 The party claiming title by acquiescence bears the burden of proof by clear and convincing evidence. *Taylor v. Hanson*, 541 A.2d 155, 159 (Me.1988) "The proof of acquiescence must be clear and convincing since recognition of such a boundary has the effect of transferring ownership of the disputed property without requiring compliance with the Statute of Conveyances." *Calthorpe II*, 441 A.2d at 289. Thus, we review the record to determine whether the referee reasonably could have been persuaded that the elements of title by acquiescence were established to a high degree of probability. *Taylor v. Comm'r of Mental Health*, 481 A.2d 139, 153 (Me.1984). On appeal, the party objecting to a referee's report bears the burden of proving error by the referee. *Calthorpe v. Abrahamson*, 423 A.2d 231, 234 (Me. 1980) (*Calthorpe I*).

1. Allain and Eldridge have not appealed the denial of their motion requesting a modification of the boundary to the middle of the roadway.

*(1) possession up to a visible line marked clearly by monuments, fences or the like;*

■ Marja first contends that the northern edge of the old roadway is not a "visible line marked clearly by monuments, fences or the like." Here, the referee found the old roadway readily discernible visually by the edge of vegetation and the remains of fences and stone walls. It is also located on the maps submitted in evidence. Further, location of the roadway has not changed except in minor detail for approximately 50 years. The referee properly found the roadway's northern edge was a clearly marked visible line for the purpose of determining whether there had been acquiescence to that line as a boundary between the properties.

■ Marja also contends that the various farming, quarrying, fencing, logging and residence activities undertaken by Allain and Eldridge or their predecessors in the area generally north of the old roadway did not establish their possession precisely up to its northern edge. In contrast to the facts of *Calthorpe II*, relied on by Marja, where a single construction activity near the disputed boundary was held to be insufficient to establish possession of the disputed land, in this case the numerous land-based activities by the defendants and their predecessors occurring close to the old roadway adequately established their possession to the edge of the roadway. *See Emerson v. Maine Rural Missions Ass'n, Inc.*, 560 A.2d 1, 2 (Me.1989) (possession of rural property may be established by its use and enjoyment in a manner similar to that of the average owner of like property).

Contrary to Marja's contention, the referee is not required to accept Marja's interpretations of the evidence of possession offered by the defendants. *See Wellington Assoc., Inc. v. Capital Fire Prot. Co., Inc.*, 594 A.2d 1089, 1091 (Me.1991).

*(2) actual or constructive notice to the adjoining landowner of the possession;*

■ Marja next contends that the referee's finding of insufficient evidence of con-

tinuous and exclusive possession for the purpose of establishing adverse possession precluded a finding that these same acts of possession establish actual or constructive notice for the purpose of acquiring title by acquiescence. Acquiring title by acquiescence, however, does not require continuous or exclusive possession, but merely possession sufficient to provide notice of the claim. *Calthorpe II*, 441 A.2d at 289. Moreover, the referee relied not only on the activities of Allain and Eldridge and their predecessors but also on the actions of Marja's predecessors in concluding that Marja had actual or constructive notice of the claim.

*(3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred;*

■ Contrary to Marja's contention, the evidence presented to the referee supports his finding as to the third requirement for establishing that the boundary by acquiescence was met. The referee heard testimony that Norman Hall sought permission from Eldridge for logging on land north of the roadway; that Norman Hall did not object to the construction of Allain's house on the disputed land north of the old roadway; that while Norman Hall objected to the amount the State paid in damages for property taken south of the old roadway during the reconstruction of Route 4 in 1963, he did not object to the State's payment to Eldridge's predecessors for land taken north of the old roadway during the same reconstruction; and that a property inventory signed by Marja's predecessor in interest, Norman Hall, at the time of his father's death described the northerly boundary of his father's property as the south side of Mast Road.

*(4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well served by recognizing the boundary.*

■ Nor is there merit in Marja's contention that the evidence does not support

the final requirement of acquiring title by acquiescence set forth in *Calthorpe II.* This requirement substitutes evidence of a tacit agreement for the actual agreement of the parties "as a matter of public policy to prevent the unsettling of established lines." *Id.,* 441 A.2d at 289 (quoting *Borneman v. Milliken,* 123 Me. 488, 494, 124 A. 200, 203 (1924)). Here, the clear evidence of acquiescence for a long period of time includes the many years that the predecessors of Allain and Eldridge maintained the land north of the old roadway, their construction of residences directly north of the old roadway, and other acts of occupation and control dating back at least 60 years. Further, the record reveals that with the knowledge of Marja's predecessors and without any objection by them the State paid the defendants' predecessors damages for a taking of land north of the old roadway in 1963, that a 1904 map depicts the property boundary as the abandoned road, and that witnesses testified that the road was treated as the *de facto* boundary by the parties' predecessors in interest.

## II.

<span style="background:black"> </span> We also disagree with Marja's contention that the referee failed to meet the mandate of the order of reference to fix the location of the disputed boundary. The court is not required to draw the line on the face of the earth, but merely to establish the line with sufficient clarity for the parties to fix its location. *Cf. Taylor,* 541 A.2d at 159; *Calthorpe II,* 441 A.2d at 290. The referee established the common boundary line as the northern edge of the old roadway that has existed in its present location for over 50 years. The northern boundary is actually visible along most of its half mile length and is clearly marked in its entirety on numerous maps and plans. It is not fatal to the referee's report that a small portion of the roadway's boundary is not currently visible due to construction activities.

The record here discloses that the referee's findings are supported by clear and convincing evidence and that the disputed boundary line is established with sufficient clarity for the parties to fix its location. The Superior Court's adoption of the referee's report was not erroneous.

The entry is:

Judgment affirmed.

All concurring.