2002 WY 50

**John DRAKE, Appellant (Defendant/Respondent),**

v.

**Gerri McCULLOH, f/k/a Gerri Drake, Appellee (Plaintiff/Petitioner).**

No. 00–295.

Supreme Court of Wyoming.

April 4, 2002.

Ann M. Rochelle * of Williams, Porter, Day & Neville, P.C., Casper, WYO, and John D. Ward * of Sheridan, WYO; C.M. Steve Aron of Aron and Hennig, Laramie, WYO, Representing Appellant.

C. John Cotton, Gillette, WYO; Vanessa Summerfield of the Wyoming Coalition for the Prevention of Domestic Violence and Sexual Assault, Laramie, WYO, Representing Appellee.

* Orders allowing withdrawal of counsel entered on July 19, 2001.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Appellant John Drake (Father) and Appellee Gerri McCulloh (Mother) appeared before the district court each seeking primary custody of their son. In its initial child custody order, the district court awarded primary custody of the child to Father which gave him decision-making authority, but determined that the parents should share physical custody of the child. The district court determined that the then five-year-old child should rotate his residency with each parent every five days. Soon afterwards, Mother petitioned for modification of custody to make her the primary caretaker with visitation for Father, and Father filed a counterclaim motion to make him primary custodian. Following a two-day trial, the district court determined that a substantial change of circumstances had occurred and it was in the child's best interests to grant Mother primary custody and award Father visitation.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Father presents these issues for our review:

A. Did the trial court err in awarding custody of [the child] to his Mother, Gerri McCulloh, based on an alleged preference by [the child] for his Mother when:

1. There was no actual testimony by [the child] that he preferred his Mother.

2. The alleged hearsay statements allegedly made by [the child] to his Mother allegedly stating a preference to live with his Mother were at best equivocal and were without any basis.

3. [The child] was only age five at the time of the alleged stated preference. The trial judge made no attempt to determine the intelligence and maturity level of [the child].

4. [The child's] answers to questions by the Department of Family Services (DFS) caseworkers showed that his

Mother had coached him to say certain things.

5. Martha Schilling, the court-appointed independent evaluator, had warned against directly asking [the child] his preference. Despite this, Jill Stubbs, Wife's expert, did so. In response to one question by Stubbs, [the child] stated that he preferred to live with his Mother. This response came after Stubbs had spent one hour questioning McCulloh in [the child's] presence, and during that one hour session, McCulloh had been making continuous negative statements about [the child's] Dad.

6. The trial court improperly disallowed expert testimony by Ray Leugers, a licensed psychologist, as to the inappropriateness of questioning of [the child] about a preference. Leugers had been McCulloh's initial counselor but she had discarded him when he suggested she needed further psychiatric evaluation. Leugers had numerous contacts with [the child] where Stubbs spent only one hour with [the child] and that was after [the child] had heard his Mother denigrate his Father to Stubbs.

B. Were the issues of attention, aggression, toilet training and sex previously raised by McCulloh and thus not a change in circumstances? Was McCulloh's perception of these supposed new issues the only new circumstance? Were those changes material and substantial changes? Was the placement of [the child] in his mother's care in [the child's] best interest?

C. Did Judge Spangler make improper evidentiary rulings?

D. Did McCulloh misuse the judicial process by judge-shopping; Guardian ad Litem shopping; and then failing to cooperate with the new Guardian ad Litem?

Mother states that the issues are:

1. Was there sufficient evidence to support the order granting Mother's petition for modification?

2. Did the trial court commit reversible error in connection with evidentiary rulings?

3. Is appellee entitled to attorney fees and costs on appeal?

## FACTS

[¶ 4] We have already addressed other issues arising from the decree of divorce in this case in *McCulloh v. Drake*, 2001 WY 56, 24 P.3d 1162 (Wyo.2001). As that decision stated, the parties were married on March 5, 1994. The wife had one son from a prior marriage, and the couple had another son, the focus of this dispute, in October of 1994. The wife filed for divorce on December 31, 1997, and, from July 26, 1999, through July 30, 1999, the trial court heard evidence pertaining to child custody, child support, property division, alimony, attorney and guardian ad litem fees, tort claims, and punitive damages. *Id.* at ¶¶ 4, 5.

[¶ 5] Following an extensive independent child custody evaluation, psychologist Martha Schilling, Ph.D., specifically recommended against joint custody, meaning joint decision-making, because neither parent was willing to put the best interests of the child above their own interests. Finding that neither parent could separate parenting from the divorce or their own needs from the child's, the parents could not communicate effectively with each other, could not be flexible about the child's arrangements or negotiate differences in good faith, Dr. Schilling determined that the parents were not good prospects for joint decision-making at that time. She recommended that Father be granted primary custody with ultimate decision-making responsibility for the child; however, she recommended that the child share residency with each parent for shorter but more frequent periods of four days. That evaluation noted that the child indirectly indicated a preference to live with his Dad.

[¶ 6] The district court awarded shared physical custody of the child and gave to Father primary decision-making power regarding medical and educational issues. It also awarded $1,200 per month to the wife for child support. *Id.* at ¶ 6. Mother appealed that decision, asserting that the district court erred when it ordered shared physical custody and that Father have primary decision-making authority. Father responded that the district court properly applied the

best-interests-of-the-child standard. *Id.* at ¶ 11. After the parties' oral arguments in this Court, the wife filed with the trial court a "Petition for Modification of Decree of Divorce to Place Primary Custody With Petitioner [Mother] as Child's Historic Primary Care Provider." The district court found that the circumstances since the entry of the Decree of Divorce had substantially changed and ordered custody of the parties' son to be changed to Mother. *Id.* at ¶ 12. Father appealed from that order. Because the circumstances surrounding this issue had changed so significantly and because the district court's order which pertained to the most recent facts had been appealed since the case at bar was heard, we decided to reserve our discussion on this issue. *Id.*

[¶ 7] The "shared residency" of the couple's five-year-old son on a rotating five-day schedule was ordered by the district court in October of 1999. On January 5, 2000, a pediatrician filed a neglect complaint against Father with the Department of Family Services (DFS). On January 26, 2000, Mother petitioned for modification of the child custody arrangement. Father answered and filed a counterclaim, seeking primary custody of the child. Declaring that it would be harmful to the child, Dr. Schilling refused to participate in another evaluation of the child. Mother hired Jill Stubbs, MS LPC, to conduct an evaluation, and Stubbs filed a behavioral assessment on March 3, 2000. On March 17, 2000, Father's licensed psychologist, Dr. Ray Leugers, reported the results of his counseling with Father and the child since November of 1999. On March 24, 2000, DFS found the neglect allegations were unsubstantiated.

[¶ 8] Mother had taken steps to disqualify the trial judge from the first order and to remove the guardian ad litem (GAL). Citing Mother's unfounded accusations and somewhat bizarre threats[1] against him, the GAL requested that he be removed and Mother ordered to pay the fees that she had not yet paid. The district court judge recused himself, and the newly assigned judge removed

the GAL, and a CASA representative was ordered to serve as interim GAL. The district court accepted Dr. Schilling's refusal to serve as an independent evaluator, but refused to assign one and, instead, determined that the parties could present the child's behavioral evaluations through expert witnesses.

[¶ 9] The district court held a two-day hearing in May of 2000, where numerous witnesses testified regarding the child's level of behavioral problems since the parents began sharing physical custody. A decision letter issued on June 5, 2000, and a final order was filed on July 24, 2000, ordering that Mother receive primary custody. In pertinent part, the trial court's decision letter states:

> "Since the divorce the child has exhibited increased problems with attention, aggression, toilet training, and sex. The anger between the parents, in the context of the present custody schedule, has contributed to these behavior problems. The child needs greater stability in his home life. This is particularly important now, as he will enter kindergarten this fall. He appears to get along somewhat better while in the custody of his mother and to have a preference for being with her.

> I find that it would be in the child's best interest to be placed in the custody of [Mother] with reasonable visitation rights for [Father]...."

This appeal followed.

## DISCUSSION

[¶ 10] The many issues presented primarily dispute the facts, requiring that we determine whether the district court erred in finding that a change of circumstances existed and the evidence supports its order that the child's best interests required that Mother be granted primary custody.

### Change of Circumstances

[¶ 11] We use an abuse of discretion standard when reviewing a district

---

1. The record shows that Mother contacted DFS on one occasion and slandered the GAL, and in a separate incident, Mother falsely reported to DFS that the child's safety while at his father's was in jeopardy requiring the GAL to write her attorney and request that both parents refrain from involving the child in their vendettas against each other.

court's decision to modify child custody arrangements. *Gurney v. Gurney,* 899 P.2d 52, 54 (Wyo.1995).

The party seeking modification of the child custody provisions of a court decree has the burden of showing that a change in circumstances affecting the child's welfare has occurred after the entry of the initial decree, that the change warrants modification of the decree and that the modification will be in the best interests of the children. In order to resolve the issue of whether there was a showing of material and substantial change in circumstances, we examine the record to determine whether the trial court could reasonably conclude from the evidence that there was such a change.

*Ready v. Ready,* 906 P.2d 382, 384–85 (Wyo. 1995) (citations omitted).

[¶ 12] In this case, both parties sought primary custody. We have previously recognized that the distinctive features between a primary custody order and a joint custody order may justify reopening the order. *Gurney,* 899 P.2d at 54.

One such distinctive feature concerns child placement stability. An order awarding custody to one parent fixes that parent as the primary nurturer of the child and the one with whom the child shall reside. Once such an order is entered, considerations of stability in child placement become of central importance. In our case law, we have shown a strong bias against reopening the order because a child is almost always harmed by a transfer from one parent to the other.

When the reopening of a joint custody order is before the court, however, the stability-of-placement consideration that is central to our strict reopening standards in the primary custodial context appears to be of minimal importance because the joint custody order has not fixed one parent as the primary nurturer. We recognize a measure of instability is inherent in a joint custody order because it requires two parents, who are not residing together, to share custodial rights and responsibilities and resolve the logistics of caring for the child.

A second distinctive feature suggests a joint custody order should be more readily opened. The premise of the joint custody order is the parents' ability to resolve between themselves the custodial details. There can be little question that joint custody requires sincere dedication on the part of each parent to safeguard the security and stability vital to a child's best interest. When the parents are unable to make this cooperative arrangement work, a change of circumstances justifying judicial reexamination of the original joint custody order is demonstrated.

*Id.* at 54–55 (citations omitted).

[¶ 13] Similar to *Gurney,* the parents here sought modification very soon after joint physical custody was ordered. Through psychologists and medical doctors, Mother provided experts to testify that Father neglected the child's hygiene and the child was having increased behavioral problems, and Father presented evidence that Mother was actively seeking to alienate the child from him. From this evidence the district court concluded that a substantial change of circumstances since the entry of the decree of divorce had occurred including the child having increased problems with attention, aggression, toilet training and acting out in an inappropriate manner. However, this evidence also showed that the parents' anger and bitterness toward each other manifested in their treatment of their son. Neither demonstrated an intent to cooperate with the other nor showed much effort to safeguard their son's security and stability. As an example, Mother refused to take the child to the preschool selected by Father. Their efforts to prove their allegations were extreme and, unfortunately, were assisted by various members of the medical community. The child was subjected to a four-day hospitalization to monitor his bowel movements; numerous visits to medical doctors regarding his toileting habits; and interviews and psychological tests by DFS personnel, psychologists, and social workers. At one extreme, experts testified that the child was neglected, exhibited signs of sexual abuse, was exposed to pornography, tried to choke his mother, and engaged in inappropriate sexual activity. At the other extreme, Father's expert testi-

fied that the five-year-old child's behavior had not changed at all since the joint custody arrangement went into effect.

[¶ 14] In accordance with *Gurney,* a reopening of a joint custody order is appropriate when both parties demonstrate that they are not providing the stability and cooperation required for this type of shared arrangement. In light of the parents' behavior towards each other and their son, we find that the district court did not err in finding that the child needed greater stability and that the circumstances warranted a modification of the joint custody arrangement.

### Evidentiary Support of Decision

[¶ 15] Father objects to the following: the district court's decision to exclude some evidence; the district court's statement that the child expressed a preference for his mother; and its decision that it is in the child's best interests to be in Mother's primary care. Our careful review of the record in the light of the written and oral arguments of the parties discloses that these arguments do not warrant extensive discussion in this opinion.

[¶ 16] Decisions concerning the admissibility of evidence are within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Clark v. Alexander,* 953 P.2d 145, 150 (Wyo. 1998). Father contends that the trial court had no basis for excluding evidence by Father's psychologist that would have established the number of visits with Father and son, and that son's feelings toward Father had not changed; and for disallowing questioning of Mother's psychologist as to her knowledge of when the child started masturbating and how often he was masturbating before entry of the original custody order. Father argues that because the trial court believed Mother's expert instead of his and found an increase in sexual activity, it was prejudicial to exclude this evidence. The amount of time at trial devoted to experts' analyses of this child and analysis of this child's "sexual activity" was extensive. Our review of the record indicates that the evidence presented on the subject was so much more than adequate that had the trial court excluded far more than it did, we would not find any prejudice to Father.

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.

*Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo. 1998) (citations omitted). Judicial discretion is defined as being "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Watt v. Watt,* 971 P.2d 608, 613 (Wyo.1999).

[¶ 17] Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored. *Reavis,* 955 P.2d at 431.

[¶ 18] Although Father points to testimony contradicting evidence of factual issues, we cannot retry this case on appeal. Deference must be given to the opportunity of the trial court to judge the credibility of the witnesses, and a reviewing court will not set aside the court's findings merely because it might have reached a different result. The trial judge is in the best position to assess the credibility of witnesses and weigh their testimony, and, thus, this Court accords considerable deference to the trial judge's findings. *Clark v. Clark,* 980 P.2d 821, 823 (Wyo.1999).

[¶ 19] We have previously stated that a district court can acknowledge a young child's preference as a relevant factor although it may not be the sole factor for determination of custody. *In Re MS*, 9 P.3d 984, 986 (Wyo.2000). A district court is not required to place consideration of relevant factors on the record; however, every case requires careful weighing of relevant factors, looking to the unique and individual family relationships, in order to reach a resolution in the best interests of the children in that family. Stability in a child's environment is of utmost importance to the child's well-being. *Id.*

[¶ 20] The parents invite us to look at the massive amount of information each side collected concerning the impact of either the shared custody arrangement or parental alienation attempts on this little boy. Each parent grievously used their son to prove their point against the other in disturbing ways. That said, we see that although much of this child's behavior is consistent with a healthy little boy who has reacted to being caught up in the war between his parents, various experts reached the different conclusion that the child's unstable home life was causing him to act out in seriously inappropriate ways. Some experts were inclined to believe that the child's behavioral changes indicated emotional or sexual abuse. Presented with this contradictory evidence regarding the implications of changes in him, the record does establish that the child's behavior had changed. In its order, the district court stated the changes in behavior that it believed had occurred; our review of the record indicates that the trial court did not place undue weight on any one expert's testimony in this case, and we find that the record supports the district court's findings of how the child's behavior had changed.

[¶ 21] In Dr. Schilling's evaluation of the child for the first custody ruling, she noted that the child indirectly indicated that he preferred to live with his father. In her evaluation, Ms. Stubbs stated that the child expressed a desire to live with his mother. In its decision letter, the district court stated: "He appears to get along somewhat better while in the custody of his mother and to

have a preference for being with her...." Father contends that the district court improperly based its decision on the child's preference and that is reversible error. The district court, however, did not base its entire decision on the child's stated preference for his mother. Father does not challenge the first part of the court's statement that the child appears to get along somewhat better while in Mother's custody. The record supports the determination that the child gets along somewhat better while in the custody of Mother. Nearly all witnesses, whether presented by Mother or Father, testified that the child needed to be with one parent for a longer period of time than that provided by the five-day rotation arrangement. The evidence showed that the child's time with Mother was more structured and the child's problems tended to increase with Father and then subside after returning to Mother's care. Although the parties devote their discussion to arguing whether it is reversible error for a trial court to base its decision on a five-year-old's stated preference, and whether that preference was spontaneous or the result of coaching, the record shows that the trial court did not base its decision on the child's preference, but permissibly noted the child's perceptions of his living arrangement.

[¶ 22] The initial custody ruling was based on a determination that the child's best interests required that the parents share in his care. The parents failed to do so, and their failure to care for their son in the way that was in his best interest required the court to determine which parent should be selected as the primary caretaker. In such a situation, where the record shows that Drake's and McCulloh's anger and bitterness towards each other interfere with their son's best interests, the district court properly focused on evidence of stability and the child's perception of stability. Its determination that granting primary custody to Mother with liberal visitation for Father would provide the child with the greatest stability, and would not be upsetting to the child, is supported by sufficient facts, and we affirm.

[¶ 23] Finally, Father requests that we find that Mother committed abuse of the judicial process because of her efforts

to disqualify a judge who did recuse himself, remove the GAL, and her refusal to cooperate with the GAL. After filing her petition for modification, Mother filed a motion stating that the modification was a new proceeding entitling her to a preemptory disqualification under W.R.C.P. 40(b)(1). Father objected on grounds that Mother was judge shopping. The trial judge filed a grievance against an attorney of record and did recuse himself. Mother also filed a motion for removal of the GAL contending that the GAL's recent employment with the Sheridan County Attorney's Office presented a conflict of interest. That motion also contended that the GAL had acted improperly. The GAL responded to the accusations as unfounded and, contending that Mother had made unfounded accusations and threats, requested removal. A new GAL was appointed, and Father contends that Mother did not cooperate with that investigation. Father did not raise the issue of abuse of process below with the trial court. Wyoming recognizes the tort of abuse of process, and its elements are "(1) an ulterior purpose; and (2) a willful act in the use of the process which is not proper in the regular conduct of the legal proceeding." *Cosner v. Ridinger*, 882 P.2d 1243, 1249 (Wyo.1994). Assuming without deciding that abuse of process could result in reversal of this decision, we see that although we have many allegations, no record supports finding that abuse of process caused the judge to recuse himself or the GAL to remove himself. On this record, we decline to address the abuse of process issue.

[¶ 24] Mother requests attorney fees and costs for this appeal. W.R.A.P. 10.05 provides:

> If the judgment or appealable order is affirmed in a civil case, appellee shall recover the cost for publication of the brief with the cost to be computed at the rate allowed by law for making the transcript of the evidence. If the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case. The amount for attorneys' fees shall not be less than one hundred dollars ($100.00) nor more than five thousand dollars ($5,000.00). The amount for damages to the appellee shall not exceed two thousand dollars ($2,000.00).

Imposing fees and costs under this rule is a sanction imposed for failure to have reasonable cause for the appeal. We are generally reluctant to impose sanctions and will do so "only in those rare circumstances where an appeal lacks cogent argument, where there is an absence of pertinent authority to support the claims of error, and/or when there is a failure to adequately cite to the record." *Stone v. Stone*, 7 P.3d 887, 891 (Wyo.2000).

[¶ 25] Mother provides us with no cogent argument or pertinent authority that Father did not have reasonable cause to appeal. Her request is denied, and the district court is affirmed.