2005 WY 116

**KG CONSTRUCTION, INC.,**
Appellant (Petitioner),

v.

**Dale D. SHERMAN, Appellee**
(Respondent).

No. 04–209.

Supreme Court of Wyoming.

Sept. 15, 2005.

Representing Appellant: Jeremy D. Michaels of Michaels & Michaels, P.C., Gillette, Wyoming.

Representing Appellee: C. John Cotton of Cotton Law Offices, Gillette, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶1]  Dale Sherman worked as a truck driver for KG Construction, Inc. (KG) for over 20 years.  In 2002, he began to suffer cervical problems and ultimately underwent surgery.  The Workers' Compensation Division (Division) determined his injury was compensable and awarded him benefits.  KG objected and a hearing was held by the Office of Administrative Hearings (OAH) which found Mr. Sherman was entitled to temporary total disability benefits because he had suffered a compensable work-related injury over a substantial period of time.  KG appealed that decision and the district court affirmed.  Finding OAH's decision was supported by substantial evidence, we affirm.

## ISSUES

[¶2]  KG presents the following two issues:

1. Is there substantial evidence to support the Hearing Examiner's decision that the claimant had met his burden of proof for temporary total disability compensation?

2. Did the [H]earing Examiner abuse his discretion by ruling on an apportionment issue when Wyoming Worker's Compensation Division Rules and Regulations specify that he did not have the authority to do so?

Mr. Sherman states the issues as follows:

1. Does W.S. § 27–14–603 require that employment be the sole cause of the injury?

2. Can appellant expand appeal beyond issues raised in original petition for judicial review, and, in any event, is there any merit to additional issues raised?

3. Was there substantial evidence to support the decision of the Office of Administrative Hearings?

## FACTS

[¶3]  Mr. Sherman began working for KG in 1979.  During his employment with KG he worked as a truck driver hauling heavy equipment, hay and oilfield tanks.  His job

also included loading baled hay onto semi trailers, off loading oilfield casing by hand, pulling rear ends out of trucks, pulling transmissions out of trucks, taking tires and wheels off, and working with tire chains weighing 50–60 pounds, that, if muddied, could weigh up to 150 pounds. Heavy lifting and heavy manual work were "part and parcel" of Mr. Sherman's job at KG. In addition to the regular work demands, Mr. Sherman testified he had sustained various traumatic injuries while employed by KG which could have contributed to his back problems.

[¶ 4] Prior to working for KG, Mr. Sherman's jobs included ranch hand, general road construction, military service, and truck driver. Mr. Sherman estimated that he spent about ten years working as a truck driver before he went to work for KG. In the mid-'80s, Mr. Sherman began having pain in the base of his neck while loading hay bales and driving his truck. He described the pain as a burning sensation which would last all day. After a hot shower and a night's sleep, the pain would be gone. However, as the day went on, the pain, which felt like a "hot knife," would return and become more severe.

[¶ 5] In February of 2002, as Mr. Sherman was driving his truck to Newcastle, Wyoming, to pick up a load of rock, he felt a pain in the back of his neck that spread into his left shoulder and down his arm. In addition to the pain, Mr. Sherman's fingers felt "numb and tingly." He stopped at a rest stop and the pain went away after he walked around. He continued driving toward Newcastle and the pain returned. It was so severe that Mr. Sherman became ill and thought he was having a heart attack. He was taken by ambulance to the hospital in Newcastle, but, after a series of tests, doctors told Mr. Sherman his heart was fine.

[¶ 6] The following week, as Mr. Sherman was driving his truck as usual, the pain returned. He immediately sought medical attention. An MRI of Mr. Sherman's back demonstrated "C5/6 central degenerative stenosis with fairly severe right sided foraminal stenosis" as well as "a left paracentral disc herniation and mild foraminal stenosis at C6/7." Mr. Sherman received a cervical epi-dural steroid injection to relieve the pain on March 29, 2002. Following an evaluation by Dr. Edward Seljeskog in Rapid City, South Dakota, on April 30, 2002, Mr. Sherman underwent surgery described as an anterior cervical discectomy and partial vertebrectomy at C5–6 and C6–7 with interbody bone fusion. Mr. Sherman returned to work for KG on July 1, 2002.

[¶ 7] Mr. Sherman sought and was granted temporary total disability benefits for the time he was off work. Contending the injury was not compensable, KG objected to the Division's determination. Following a hearing, the hearing examiner ruled the injury was a compensable injury occurring over a substantial period of time under Wyo. Stat. Ann. § 27–14–603(a) (LexisNexis 2003). The hearing examiner found "the repeated traumas, stresses, and strains of work over a 22 year period with KG Construction materially contributed to the degeneration of the cervical spine and to the fact that the degeneration became symptomatic."

[¶ 8] KG sought review in the district court, which affirmed the order rendered by OAH. This appeal followed.

### STANDARD OF REVIEW

[¶ 9] The substantial evidence test is the appropriate standard of review in appeals from contested case proceedings when factual findings are involved and both parties submit evidence. *Robbins v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2003 WY 29, ¶ 18, 64 P.3d 729, 732 (Wyo.2003). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence. Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may still be found to be arbitrary or capricious for other reasons. An appellate court does not examine the record only to determine if there is substantial evidence to support the agency's decision, but it also must examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it.

*Newman v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2002 WY 91, ¶ 24, 49 P.3d 163, 172 (Wyo.2002). In the instant case, the hearing examiner made factual findings and both parties submitted evidence; thus, we will apply the substantial evidence test.

## DISCUSSION

[¶ 10] KG argues that Mr. Sherman failed to meet the burden of proof applicable to claims for injuries which have occurred over a substantial period of time. Although KG does not contest that Mr. Sherman suffered major back trauma, it asserts his back condition was due to wear and tear from 40 years of employment, rather than directly attributable to the time Mr. Sherman worked for KG. In response, Mr. Sherman contends substantial evidence existed to support the hearing examiner's determination that his employment was a proximate cause of his injury, and that the statutes did not require the work must be the *sole* cause of the injury.

[¶ 11] An employee seeking compensation for an injury that occurs over a substantial period of time is statutorily required to prove several elements by a preponderance of the evidence. *Baxter v. Sinclair Oil Corp.*, 2004 WY 138, ¶ 11, 100 P.3d 427, 431 (Wyo.2004). Wyo. Stat. Ann. § 27–14–603(a) (LexisNexis 2003) provides:

(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of evidence that:

(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;

(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;

(iii) The injury can fairly be traced to the employment as a proximate cause;

(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and

(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

"[Section] 27–14–603 was intended to require a higher burden of proof for workers claiming benefits for illnesses or injuries developing over time without a definite triggering accident or event. Such situations might include repetitive motion injuries or repeated exposure to caustic or carcinogenic substances." *Yenne–Tully v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 12 P.3d 170, 172 (Wyo.2000). We have held this statutory burden of proof requires a claimant/employee to prove the claim arose out of and in the course of his or her employment through competent medical evidence, and to prove each of the five specified criteria which show a causal connection between the injury and employment by a preponderance of the evidence. *Id.*

[¶ 12] Thus, our threshold inquiry is whether substantial evidence exists to support the finding that Mr. Sherman, using competent medical evidence, demonstrated that his claim arose out of and in the course of his employment with KG. We have stated:

"To show that the injury arises out of or in the course of employment, the claimant must show a causal connection between the injury and the employment. This causal connection exists when there is a nexus between the injury and some condition, activity, environment or requirement of the employment."

*Baxter*, ¶ 12 (citations omitted). We have held that

the causal connection between an accident or *condition* at the workplace is satisfied if the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the *precipitation, aggravation or acceleration* of the injury. We do not invoke a standard of reasonable medical certainty with respect to such causal connection. Testimony by the medical expert to the effect that the injury "most likely," "contributed to," or

"probably" is the product of the workplace suffices under our established standard. *Hall v. State ex rel. Wyo. Workers' Comp. Div.*, 2001 WY 136, ¶ 16, 37 P.3d 373, 378 (Wyo.2001) (quoting *In re Pino*, 996 P.2d 679, 685 (Wyo.2000)) (emphasis added).

[¶ 13] Mr. Sherman did not introduce medical testimony on his own behalf. In fact, neither of Mr. Sherman's treating physicians presented testimony at the hearing. A letter from a physician's assistant from the office of one of the treating physicians, which stated Mr. Sherman's work was a major factor contributing to his injury, was disregarded by the hearing examiner "for purposes of this case" apparently because it was signed by the physician's assistant. Although Mr. Sherman produced no medical testimony of his own, the testimony provided by KG's expert, Dr. Joseph Allegretto, ultimately provided the requisite medical proof that Mr. Sherman's job was a proximate cause of his injury. The hearing examiner explained how Dr. Allegretto's testimony supported the conclusion that the work Mr. Sherman performed while employed at KG was a cause of Mr. Sherman's back problems. While Dr. Allegretto adroitly stopped short of saying Mr. Sherman's employment at KG was a "direct cause," he did testify as follows:

Q: Can you say whether Mr. Sherman's 20–some years of truck driving for KG Construction caused his disc problems?

A: I can say that they contributed.

[¶ 14] Dr. Allegretto also admitted that Mr. Sherman's work activities, including the 23 years working for KG, were a "major contributing factor for [Mr. Sherman's] cervical spondylosis and stenosis." Though Dr. Allegretto did claim it was "impossible to know" how much Mr. Sherman's work for KG contributed to his problem, as opposed to his work for other trucking companies, he unquestionably agreed Mr. Sherman's work was a contributing factor. In fact, Dr. Allegretto testified it was "correct" that repetitive trauma to the cervical spine can cause degeneration and problems with the cervical spine and discs. He testified "the jostling around in a semi can be very aggravat[ing] to a very stiff spine. You get the impression that in a cab that's bouncing around on un-even terrain that the muscles of the head and neck are trying to stabilize the head. The added force of the muscles pulling down and stabilizing just increases the amount of pressure and compression at the disk level."

[¶ 15] We have held claimants fail to prove causation when their physician testifies causation was "certainly a possibility," but could not make an "authoritative statement." *Thornberg v. State. ex rel. Wyo. Workers' Comp. Div.*, 913 P.2d 863, 869 (Wyo.1996). However, in this instance, Dr. Allegretto made an authoritative statement that, while Mr. Sherman's 20–years of working for KG might not have been the only cause, his employment at KG was certainly a contributing factor. Dr. Allegretto agreed that "working hard" and "lifting" are cumulative traumas that "add up over time." Therefore, under our established standard, the record supports the OAH finding that Mr. Sherman demonstrated his claim arose out of and in the course of his employment.

[¶ 16] KG points to selected statements by Dr. Allegretto claiming they were insufficient, including that Mr. Sherman's years of driving, hauling, loading and lifting "may have" contributed to his condition, and that it would be "impossible to know" if Mr. Sherman's employment with KG contributed to the injury. These selected quotes are not representative of the entire record. Instead, when Dr. Allegretto's entire testimony is reviewed, the nexus between Mr. Sherman's work and his injury is clear.

■ [¶ 17] Section 27–14–603(a) establishes five separate elements a claimant must prove to establish an injury occurring over a substantial period of time. Subsections (i), (ii), (iii), and (v) require proof that the work was a proximate cause of the injury. Dr. Allegretto's testimony provided proof satisfying these subsections. "Although each of the five elements [is] specifically enumerated in the statute, they are closely related because each contributes to indicate whether the employment environment caused the injury. Therefore, the same evidence will often offer support to several of the elements." *Baxter*, ¶ 14.

[¶ 18] Section 27–14–603(a)(iv) requires the claimant to prove the injury did not result from a hazard to which employees would have been equally exposed outside of the employment. To address this element, KG offered Dr. Allegretto's testimony that three "cumulative traumas" added up over time to cause Mr. Sherman's injury: aging, smoking, and working. Most of Mr. Sherman's working life was spent working for KG. Prior to working for KG, his work experience consisted of one year as a ranch hand, two years in the military, and ten years in road construction and driving trucks. However, he spent over double that time working for KG, averaging 55 hours per week for over 23 years. In recognition of the contribution of his prior work, the hearing examiner remanded Mr. Sherman's award to allow the Division to consider apportionment as provided by § 27–14–603(e).

[¶ 19] Although Dr. Allegretto claimed Mr. Sherman's smoking could have contributed to his injury, he testified "no studies show that a smoker has a higher propensity for disc herniations than the regular population." Additionally, he admitted that he has "a personal bias against smoking" because he "just [doesn't] care for the way tobacco companies don't necessarily inform the people that smoke of all the risks."

[¶ 20] The third possible contributing factor Dr. Allegretto listed was Mr. Sherman's age. Whether or not the effects of aging would have manifested themselves in the same way on Mr. Sherman's body under different work circumstances, Dr. Allegretto did not say. Indeed, he testified at length about the degeneration of the human spine and opined that degeneration begins at birth. However, he was not aware of any information regarding Mr. Sherman's family to indicate that heredity may have played a role in his back problems. Further, Dr. Allegretto stated most people who suffer cervical disc degeneration usually experience it prior to the age of 50. However, he also opined Mr. Sherman's 60–year–old spine showed substantially more degeneration than normal and his neck looked like that of a 70 or 80 year old.

[¶ 21] In addition to the doctor's testimony concerning other possible causes, KG educed testimony from Mr. Sherman about his activities outside of work in an effort to prove those activities caused his back problems. Mr. Sherman testified to playing pick-up baseball and football as a boy, water skiing as an adult, and driving a used Ford pick-up with 300,000 miles on it, all of which, in the opinion of the hearing examiner, failed to outweigh the evidence that the injury was caused by his work.

[¶ 22] Taking into consideration all of the above testimony, the hearing officer stated:

The claimant worked for 40 years with heavy equipment, trucks, and loading and unloading heavy cargo. His cervical degeneration is much greater than is to be expected of a 60 year old man. A combination of traumatic injuries caused by falls, slips, lifting of heavy oil field pipe, driving rough riding trucks, all contributed to the severity of his disc degeneration. These insults were cumulative and arose over a substantial period of time.

The Office finds that at least some of the stresses and traumas which caused [Mr. Sherman's] cervical spine degeneration occurred prior to his employment with KG Construction, and the Office further finds as a matter of fact that the repeated traumas, stresses, and strains of work over a 22 year period with KG Construction materially contributed to the degeneration of the cervical spine and to the fact that the degeneration became symptomatic.

[¶ 23] The hearing examiner, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. An agency's findings of fact are accorded deference, and will not be overturned unless they are clearly contrary to the overwhelming weight of the evidence. *Baxter*, ¶ 9.

[¶ 24] After careful review of the entire record, we are persuaded the evidence supported the hearing examiner's conclusion that Mr. Sherman's employment at KG materially contributed to his back problems. According the findings the deference they are due, the hearing examiner's conclusion that Mr. Sherman's back problems followed as a

natural incident of his work, which involved constant jostling of his spine in the truck cab and heavy labor attendant to the truck driving, is not contrary to the overwhelming weight of the evidence. We likewise find no error in the hearing examiner's conclusion that Mr. Sherman's work at KG was a proximate cause of his back problems and no hazard outside of his work was identified which could have just as well caused the injury. Accordingly, we agree with the conclusion that Mr. Sherman met his burden of proving, by a preponderance of the evidence, that his injuries occurred over a substantial period of time and arose in the course of his employment with KG.

[¶ 25] In its appellate brief, KG suggests Mr. Sherman's back problem resulted from a pre-existing condition that worsened over time, and he had the added burden of proving the work at KG contributed to aggravating his preexisting degenerative spine condition to a material degree pursuant to Wyo. Stat. Ann. § 27–14–102(a)(xi)(F) (LexisNexis 2003) citing *Frazier v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 997 P.2d 487, 490 (Wyo.2000). The instant case began as a claim under § 27–14–603, as an injury that occurred over a substantial period of time. We find no mention in the record of a claim for aggravation of a pre-existing condition. KG points to no evidence that Mr. Sherman experienced the severe symptoms which appeared in 2002 prior to his employment with KG. Moreover, KG did not raise the issue of aggravation of pre-existing injury at the hearing and the OAH decision did not consider or rely upon it. We have consistently declined to address issues not raised before the agency. *Kunkle v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 49, ¶ 14, 109 P.3d 887, 891 (Wyo.2005).

### Apportionment

[¶ 26] KG asserts in its second issue that the hearing examiner erroneously remanded the benefit award to the Division for apportionment. KG contends the hearing examiner lacked the authority to find apportionment was proper and the Division, rather than the hearing examiner, should have made that determination. In response, Mr. Sher-

man asserts the hearing examiner was simply directing the Division's attention to the fact that apportionment may have been appropriate in this case.

[¶ 27] Section § 27–14–603(e) states:

In those proceedings in which the entitlement of an employee to benefits for successive compensable injuries is established but no single employer can be determined to be chargeable for the injuries, the division shall apportion the benefit charge in accordance with W.S. 27–14–201(d).

Although the instant case does not involve a second compensable injury, this statute nonetheless clarifies that it is up to the *Division* to apportion benefits charges. Indeed, the hearing examiner's order was quite deferential to the Division on this issue:

"There is a question of apportionment. The Office finds that it is not appropriate in this situation, particularly when the Division was not participating as a party, to address the issue of apportionment without affording the Division a reasonable opportunity to first address that issue. The matter was not referred to the Office as an apportionment issue. It is therefore appropriate to remand the matter to the Division to make its determination as to whether the cost of injury should be apportioned fully to KG Construction or should be apportioned otherwise. The employer should receive notice of that determination and should have the normal statutory opportunity to object.

In the meantime, the claims should be paid. The Division's determination of apportionment should not effect [sic] the Claimant's entitlement to benefits.

The matter is remanded to the [Division] to determine whether the claims in this matter should be apportioned between the employer, KG Construction and any other employer or industry group."

[¶ 28] Why KG would object to this determination is puzzling. A finding by the Division that the benefits awarded should be apportioned would be in KG's favor. Should the Division grant apportionment, KG would

be credited for that portion of the claims paid which was not its responsibility.

[¶ 29]   Affirmed.