2005 WY 159

C. John COTTON, Appellant (Petitioner),

v.

Gerri E. McCULLOH, Appellee (Respondent).

No. 05–60.

Supreme Court of Wyoming.

Dec. 15, 2005.

See also 105 P.3d 1091.

Representing Appellant: C. John Cotton of Cotton Law Office, Gillette, Wyoming; and Stephen H. Kline of Kline Law Office, P.C., Cheyenne, Wyoming. Argument by Mr. Kline.

Representing Appellee: R. Michael Vang of Brown & Hiser, LLC, Laramie, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] Attorney C. John Cotton appeals from the district court's affirmance of a decision rendered by a panel of the Wyoming

State Bar Committee on Resolution of Fee Disputes (the fee dispute committee). Mr. Cotton and client Gerri McCulloh disagreed about the amount of attorney's fees and costs Mr. Cotton was entitled to for representing her in a divorce and other related proceedings. The fee dispute committee ordered Mr. Cotton to refund $23,533.16 to Ms. McCulloh. The district court affirmed the fee dispute committee's decision. Finding no error, we also affirm.

## ISSUES

[¶ 2] Mr. Cotton presents the following issues for our consideration:

1. Did the fee dispute committee and the district court fail to make necessary findings regarding mediation and GAL expenses, and regarding effect of appellant McCulloh's agreement to pay fees?

2. Should credit be afforded for $6,148.59 in mediation and initial GAL expenses paid at the request and the benefit of Gerri E. McCulloh?

3. Did the court award fees in February 1999, or did the parties treat the funds awarded by the court as fees modifying the initial cap, including the fees now at issue?

4. Are Gerri E. McCulloh's claims that she did not receive the bills, and did not treat the amounts disbursed as fees contrary to her own written admissions?

5. Are Gerri E. McCulloh's claims barred by principles of contract, laches and estoppel?

Ms. McCulloh articulates a single issue:

Did the fee dispute committee abuse its discretion by the manner in which it entered a judgment in the fee dispute arbitration hearing between Ms. McCulloh and Mr. Cotton?

## FACTS

[¶ 3] This case is the most recent chapter in the ongoing saga of Ms. McCulloh's divorce from John Drake. In *McCulloh v. Drake*, 2001 WY 56, 24 P.3d 1162 (Wyo.2001) (*McCulloh I*), this Court reviewed the dis-

trict court's determinations on the parties' divorce and Ms. McCulloh's separate tort claims. We reserved discussion of the child custody and support issues because an appeal of a post-decree custody modification was also pending before this Court. *Id.,* ¶ 11–12, 24 P.3d at 1165. We concluded the district court did not abuse its discretion when it divided the marital property. *Id.,* ¶ 19, 24 P.3d at 1168. With regard to Ms. McCulloh's tort claims, we recognized, under certain circumstances, a spouse may assert a claim for intentional infliction of emotional distress for conduct which occurred during the marriage and the tort claim should be heard separately from the divorce proceedings. *Id.,* ¶¶ 26, 29–30, 24 P.3d at 1170–71. Consequently, this Court affirmed in part, reversed in part, and remanded to the district court for a jury trial on Ms. McCulloh's intentional infliction of emotional distress claim. *Id.,* ¶¶ 29–30, 43, 24 P.3d at 1170–71, 1173.

[¶ 4] In 2002, we reviewed the district court's decision granting Ms. McCulloh's request for modification of the child custody provisions of the original divorce decree. *Drake v. McCulloh,* 2002 WY 50, 43 P.3d 578 (Wyo.2002) (*McCulloh II*). The district court ruled a substantial change in circumstances had occurred since the original decree and awarded primary custody of the child to Ms. McCulloh. *Id.,* ¶ 1, 43 P.3d at 580. Finding sufficient evidence to support that conclusion, we affirmed the district court's decision. *Id.,* ¶ 22, 43 P.3d at 585. Ms. McCulloh, subsequently, challenged the district court's denial of her petition for increased child support in *McCulloh v. Drake,* 2005 WY 18, 105 P.3d 1091 (Wyo.2005) (*McCulloh III*). We affirmed in part, reversed in part, and remanded for a determination of whether she was entitled to an increase in child support payments. *Id.,* ¶ 29, 105 P.3d at 1098.

[¶ 5] The case at bar involves an attorney's fees dispute between Ms. McCulloh and Mr. Cotton. Ms. McCulloh was originally represented by another attorney in the divorce proceedings, but, after a failed mediation, she sought new counsel. Ms. McCulloh contacted Mr. Cotton, and he identified the potential tort claims. Ms. McCulloh and Mr.

Cotton entered into a representation agreement on October 17, 1998, which covered the divorce, initial appeal, and the tort claims. The fees section of the agreement included hourly and contingency fee provisions. The hourly fee provision included a cap on the hourly fees which Mr. Cotton could charge Ms. McCulloh. The agreement provided the maximum hourly fees for the divorce would be the greater of $15,000 or the amount of hourly fees assessed against the opposing party and the maximum hourly fees on appeal would be the greater of $2,500 or the amount of hourly fees assessed against the opposing party. Under the terms of the representation agreement, Ms. McCulloh was also responsible for reimbursing Mr. Cotton for any costs he paid on her behalf.

[¶ 6] While the divorce proceeding was pending, Mr. Cotton filed a motion requesting an award of attorney's fees and costs from Mr. Drake, pursuant to Wyo. Stat. Ann. § 20–2–111 (LexisNexis 2005).[1] The district court entered an Interim Stipulated Order of Distribution which confirmed the parties' agreement that Mr. Drake would pay Ms. McCulloh $50,000 on or before February 12, 1999. The court's order specifically stated that it was not ruling upon Ms. McCulloh's motion for attorney's fees and she could use the funds in any way she pleased, subject to the requirement she provide an accounting to Mr. Drake. In response to the district court's order, Mr. Drake sent a check to the clerk of the district court with a notation written on the memo line which stated "Legal Fees Plaintiff." Mr. Cotton arranged for Ms. McCulloh to sign a limited power of attorney, giving him the authority to execute any checks made payable to her from Mr. Drake or the clerk of the district court. Pursuant to the limited power of attorney, Mr. Cotton deposited the $50,000 in his trust account.

[¶ 7] Mr. Cotton prepared an accounting of the $50,000, which showed he disbursed approximately $35,000 to himself for attorney's fees. He gave approximately $2,800 to Ms. McCulloh and applied the remaining funds to the costs of the action. The district court held a bench trial and issued a decision letter in August 1999, addressing child custody, child support, property division, and Ms. McCulloh's tort claims. The district court's property division included a $200,000 cash award to Ms. McCulloh. Ms. McCulloh and Mr. Drake both appealed the district court's decision in *McCulloh I*.

[¶ 8] Early in 2000, Mr. Cotton and Ms. McCulloh believed the $200,000 cash award from Mr. Drake would soon be available. Mr. Cotton told her the check should be made payable to both of them and, if she did not agree, he would not continue to represent her in the on-going litigation with Mr. Drake. Ms. McCulloh did not agree with Mr. Cotton's claim to the property distribution and wrote a letter dated February 1, 2000, to the executive director of the Wyoming State Bar, questioning Mr. Cotton's billing practices and requesting a fee arbitration. However, instead of sending the letter, she simply read it to Mr. Cotton over the telephone. As it turned out, the $200,000 property distribution was not made available at that time.

[¶ 9] On June 15, 2001, this Court issued its decision in *McCulloh I* and a few days later Mr. Cotton and Ms. McCulloh had a meeting in his office to discuss the outstanding fees and costs. They were not, however, able to reach an agreement, and on August 3, 2001, Ms. McCulloh sent a letter to Mr. Cotton, again questioning his billing practices.

[¶ 10] In September 2001, Mr. Drake tendered $169,200 to the district court. Mr. Cotton sought and received an order from the district court for release of the funds to him and Ms. McCulloh. Ms. McCulloh con-

---

1. § 20–2–111. Alimony during pendency of action; allowance for prosecution or defense of action; costs, states:

In every action brought for divorce, the court may require either party to pay any sum necessary to enable the other to carry on or defend the action and for support and the support of the children of the parties during its pendency. The court may decree costs against either party and award execution for the costs, or it may direct costs to be paid out of any property sequestered, in the power of the court, or in the hands of a receiver. The court may also direct payment to either party for such purpose of any sum due and owing from any person.

tacted the district court clerk's office and directed them to deliver the money directly to her. Mr. Cotton filed a $138,829.88 attorney's fees lien against the proceeds, and the funds were tendered to him. Ms. McCulloh fired Mr. Cotton and demanded he send the property distribution proceeds to her. Nevertheless, he used Ms. McCulloh's limited power of attorney to disburse: $100,000 to himself for outstanding costs and fees; $40,000 to the district court to replenish an account which was held jointly by Ms. McCulloh and her minor son; $7,500 to pay Ms. McCulloh's prior attorney; and the remaining $21,700 to Ms. McCulloh.

[¶ 11] On December 13, 2001, Ms. McCulloh filed a petition for resolution of fee dispute with the fee dispute committee, and, soon thereafter, Mr. Cotton filed his own fee dispute petition. The fee dispute committee held a hearing on both petitions on July 12, 2002. On March 31, 2003, the fee dispute committee issued its resolution order, requiring Mr. Cotton to refund $71,033.16 to Ms. McCulloh. The fee dispute committee concluded Mr. Cotton's fees for the initial divorce and appeal were limited to the hourly fee cap contained in the parties' representation agreement, but the subsequent proceedings were not included in the fee agreement. The fee dispute committee also awarded him $4,000 for his contingency fee in the tort action. With regard to Mr. Cotton's request for reimbursement of costs, the fee dispute committee carefully reviewed each of his bills and awarded all of his claimed costs, with the exception of a few items which were billed in error.

[¶ 12] Mr. Cotton filed a motion for partial reconsideration, asking the fee dispute committee to credit him with the $40,000 he had tendered to the district court and the $7,500 he had paid to Ms. McCulloh's prior attorney. The fee dispute committee issued a supplemental order giving Mr. Cotton credit for those amounts and revising the

amount he owed Ms. McCulloh to $23,533.16. Mr. Cotton filed a petition for review with the district court, and the district court affirmed the fee dispute committee's decision.[2] Mr. Cotton subsequently filed a notice of appeal with this Court.

## STANDARD OF REVIEW

[¶ 13] One of the more difficult aspects of this case is determining the standard of review to apply to decisions from the fee dispute committee. The district court recognized the problem and stated in its order affirming the fee dispute committee's decision:

Wyoming law is unclear as to the legal standard applicable to appeals from the Committee on Resolution of Fee Disputes, however, Appellant has presented nothing that contradicts the findings or conclusions of the committee under any standard of review, including de novo.

[¶ 14] In resolving this matter, we look to the language of the Wyoming Rules for Resolution of Fee Disputes. " 'A rule of this court has the force and effect of a statute, and is to be construed in the same manner as a statute.' " *Vanasse v. Ramsay*, 847 P.2d 993, 999–1000 (Wyo.1993) quoting *Lapp v. City of Worland*, 612 P.2d 868, 874–75 (Wyo.1980). Consequently, in interpreting court rules, we apply our rules of statutory construction. *Andersen v. Hernandez*, 2005 WY 142, ¶ 7, 122 P.3d 950; *Vanasse*, 847 P.2d at 999–1000. The rules of statutory construction are well-known:

We first decide whether the statute is clear or ambiguous. This Court makes that determination as a matter of law. A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc. [v. Wyoming State Board of Equalization]*, 813 P.2d [214,] 220

2. The district court allowed Mr. Cotton to present additional evidence for its consideration during the appeal. Our decision in *Speight, McCue & Associates, P.C., v. Wallop*, 2005 WY 75, 115 P.3d 39 (Wyo.2005), prohibits the district court from taking additional evidence in an appeal from the Wyoming State Bar Committee on Res-

olutions of Fee Disputes. The error was, however, harmless because in this case the district court specifically found the additional evidence Mr. Cotton presented was irrelevant to its decision and, consequently, did not rely upon it in affirming the fee dispute committee's decision.

[ (Wyo.1991) ]. A "statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." 813 P.2d at 219–20.

If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia.*

*State Department of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994). If we determine that the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent.

*State v. Bannon Energy Corporation,* 999 P.2d 1306, 1308–09 (Wyo.2000) (some citations omitted); *see also Wyodak Resources Development Corporation v. Wyoming Department of Revenue,* 2002 WY 181, ¶ 9, 60 P.3d 129, ¶ 9 (Wyo.2002).

*Airtouch Communications, Inc. v. Dep't of Revenue,* 2003 WY 114, ¶ 10, 76 P.3d 342, 347 (Wyo.2003).

"When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent." *State ex rel. Motor Vehicle Div. v. Holtz,* 674 P.2d 732, 736 (Wyo.1983). The ultimate goal is to determine the intent of the legislature.

*Stewart Title Guaranty Co. v. Tilden,* 2005 WY 53, ¶ 18, 110 P.3d 865, 872 (Wyo.2005). "We have held a specific statute controls over a general statute on the same subject. A specific provision in a statute controls over an inconsistent general provision pertaining to the same subject." *State v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 23, 18 P.3d 1182, 1189 (Wyo.2001), quoting *Thunderbasin Land, Livestock & Investment Co. v. County of Laramie,* 5 P.3d 774, 782 (Wyo. 2000).

[¶ 15] Fee Dispute Rule 9 states: "Pursuant to W.S. § 16–3–101(b)(1), proceedings under these rules are in the nature of arbitration and exempt from the Wyoming Administrative Procedures Act (W.S. §§ 16–3–101 through 16–3–115)." On the other hand, Fee Dispute Rule 14(a) states that judicial review of a decision of the fee dispute committee is commenced by filing a petition for review under W.R.A.P. 12, which pertains to judicial review of administrative actions. Fee Dispute Rule 14(d) directs the court to "review the record" from the fee dispute committee. W.R.A.P. 12.09 specifically embraces the standard of review for administrative decisions outlined in the Wyoming Administrative Procedures Act, at Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005). Section 16–3–114(c) states in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

* * *

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * *

(E) Unsupported by substantial evidence in a case reviewed on the record

of an agency hearing provided by statute.

[¶ 16] On their face, the fee dispute rules are inconsistent. Fee Dispute Rule 9 states the proceeding before the fee dispute committee is in the nature of an arbitration and the Wyoming Administrative Procedures Act does not apply. Whereas, Fee Dispute Rule 14 directs that appeals from decisions of the fee dispute committee must be taken under Rule 12 of the Wyoming Rules of Appellate Procedure. W.R.A.P 12 dictates that we look to § 16-3-114(c) of the Wyoming Administrative Procedures Act for the standard of review.

[¶ 17] It is important to determine whether the standard of review applicable to arbitrations or administrative decisions applies to appeals from the fee dispute committee because those standards of review differ significantly. *JBC of Wyoming Corp. v. City of Cheyenne,* 843 P.2d 1190, 1194 (Wyo.1992). Wyoming arbitration statutes give courts very limited authority to review arbitrators' decisions. Wyo. Stat. Ann. §§ 1-36-113 through 119 (LexisNexis 2005). *See also, Pecha v. Smith, Keller & Associates,* 942 P.2d 387, 390-91 (Wyo.1997); *JBC,* 843 P.2d at 1194. In contrast, judicial review of administrative agency decisions, pursuant to § 16-3-114(c), requires a review of the entire record to determine whether there is substantial evidence to support the agency's determination. *See e.g., KG Construction, Inc. v. Sherman,* 2005 WY 116, ¶ 9, 120 P.3d 145, 147 (Wyo.2005).

[¶ 18] We are able to reconcile the inconsistencies in the fee dispute rules by reading the rules *in pari materia* and giving effect to each provision. Under Fee Dispute Rule 9, the procedures set forth in Wyoming's version of the Uniform Arbitration Act, Wyo. Stat. Ann. § 1-36-101 through 119 (LexisNexis 2005), should be used by the fee dispute committee to conduct the evidentiary hearing.[3] Judicial review of the fee dispute committee's decision, however, will be conducted in accordance with Fee Dispute Rule 14 by employing standards provided in W.R.A.P. 12. This interpretation of the fee dispute rules allows the rule which specifically addresses judicial review (Fee Dispute Rule 14) to control over the rule which addresses the fee dispute process in general (Fee Dispute Rule 9). Moreover, our decision gives effect to the language in Fee Dispute Rule 14(d) which directs the appellate court to "review the record" of the fee dispute committee hearing. Treating the fee dispute committee as an administrative agency for the purposes of appeal recognizes the importance of the fee dispute committee's function in resolving the factual issues involved in fee disputes. By applying our standard of review for administrative decisions, we give deference to the fee dispute committee's findings of fact, while affording the parties the right to judicial review of the fee dispute committee's decision to ensure substantial evidence supports those factual findings. *See e.g., KG Construction, Inc.,* ¶ 9, 120 P.3d at 147; *Newman v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002).

[¶ 19] Thus, we will scrutinize the fee dispute committee's decision in this case in accordance with the procedures for judicial review of administrative decisions as set forth in W.R.A.P. 12.01 *et. seq.* and § 16-3-114(c). As we have discussed on innumerable occasions:

> The substantial evidence test is the appropriate standard of review in appeals from contested case proceedings when factual findings are involved and both parties submit evidence. *Robbins v. State ex rel. Wyo. Worker's Safety & Comp. Div.,* 2003 WY 29, ¶ 18, 64 P.3d 729, 732 (Wyo.2003).

---

3. Wyoming's arbitration statutes set forth procedures for arbitration hearings, which include the right to notice of the hearing and the right to present evidence, call witnesses, and cross examine opposing witnesses at the hearing. *See* § 1-36-110. There is no claim those procedures were not followed in this case. Although we recognize Fee Dispute Rule 9 states the hearing will be conducted as an arbitration and the Wyoming Administrative Procedures Act does not apply, there is little difference between a contested case hearing and the hearing procedures set out in the arbitration statutes. The goal of each is to provide the parties a fair hearing. Compare § 1-36-110 (arbitration hearing procedures) and Wyo. Stat. Ann. § 16-3-107 (LexisNexis 2005) (contested case procedures).

Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence. Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may still be found to be arbitrary or capricious for other reasons. An appellate court does not examine the record only to determine if there is substantial evidence to support the agency's decision, but it also must examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it. *Newman v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2002 WY 91, 49 P.3d 163, 172 (Wyo.2002).

*KG Construction, Inc.*, ¶ 9, 120 P.3d at 147. The fee dispute committee's conclusions of law, however, are not entitled to the same deference as its factual findings. We review the fee dispute committee's conclusions of law *de novo*. *DC Production Service v. Dep't of Employment*, 2002 WY 142, ¶ 7, 54 P.3d 768, 771 (Wyo.2002).

## DISCUSSION

### A. Credit for Costs Paid on Behalf of Client

[¶ 20] Mr. Cotton complains the fee dispute committee erred by failing to give him credit for two payments totaling $6,148.59, which he made on behalf of Ms. McCulloh in February 1999. The disputed costs include a payment of $2,174.12 to the guardian ad litem and a payment of $3,974.47 to a mediation firm. According to Mr. Cotton, these costs were incurred by Ms. McCulloh prior to his representation of her, but he paid them out of the $50,000 interim award to Ms. McCulloh. The costs claimed by Mr. Cotton were referenced in his accounting of the disbursements from the $50,000 award but were not included in his billing statements.

[¶ 21] Mr. Cotton's financial documentation is somewhat difficult to follow. For example, in comparing the $50,000 account-

ing to his bills, there are some costs which are referenced on the accounting and are also included in the billing statements and others, like the costs at issue here, which are incorporated into the accounting but are not included in his billing statements. Mr. Cotton claims these costs were not included in his statements because they were not incurred while he represented Ms. McCulloh. To further cloud the issue, in addition to the two disputed costs, there is one other cost included in the accounting and not reported on Mr. Cotton's bills—an additional guardian ad litem bill of $3,974.47.[4] Mr. Cotton does not, however, argue that the fee dispute committee erred by failing to credit him with that cost.

[¶ 22] Mr. Cotton's pre-hearing memorandum contained an itemization of the fees and costs which he asserted Ms. McCulloh owed to him. With regard to the original divorce proceeding, he claimed she still owed him $41,400.29 in costs and fees. Mr. Cotton referred to the $50,000 accounting in his pre-hearing memorandum but did not explain that some of the costs included in the accounting were not included in his billing statements.

[¶ 23] According to Fee Dispute Rule 11(c), the "attorney is responsible for carrying the burden of proof by a preponderance of the evidence. If the attorney fails to carry the burden by a preponderance of the evidence, the panel shall enter a resolution order against the attorney." The fee dispute committee used Mr. Cotton's billing statements to fashion its decision. The resolution order evidences the fee dispute committee's meticulous examination of Mr. Cotton's billing statements, which were voluminous and somewhat confusing, and awards all costs claimed in those bills, except three items which were billed twice in error. Mr. Cotton does not direct us to any evidence in the record where he explained to the fee dispute committee that he was entitled to an award of costs not included in his billing statements.

[¶ 24] Mr. Cotton had ample opportunity to present his claim to the fee dispute committee at the hearing. He testified as a

---

4. It is unusual that this guardian ad litem disbursement is for exactly the same amount Mr. Cotton claimed he paid to the mediator on behalf of Ms. McCulloh.

witness and acted as an advocate on his own behalf by arguing the meaning of the evidence presented. Under Fee Dispute Rule 11(c), Mr. Cotton had the burden of proving that he was entitled to be awarded fees and costs. On this record, we cannot fault the fee dispute committee for using his billing statements as the basis for determining the amounts due to him. It was not the fee dispute committee's obligation to check each bill to make sure Mr. Cotton had included all costs he paid on behalf of Ms. McCulloh. Consequently, we cannot criticize the fee dispute committee for disregarding the two costs at issue here.

### B. Application of the Representation Agreement Fee Cap

[¶ 25] Mr. Cotton argues that the fee dispute committee erred by enforcing the limited hourly fee cap contained within the parties' representation agreement. The fees section of the agreement stated, in pertinent part:

### II.

### FEES

After review and/or discussion of the factors contained in the paragraph "Negotiation of Fees", the client agrees to pay a limited hourly fee and a contingent or bonus fee as follows:

A. Limited hourly fee:

Client agrees to provide an initial retainer of $2,500, to be increased to $30,000 upon receipt of prior attorney fees from the adverse party. Attorney will provide work against the retainer at the rate of $85 per hour.

The maximum hourly fees to be paid by the client to Attorney shall be the greater of (1) $15,000, or (2) the amount of hourly fees assessed against the opposing party, provided that if the case is appealed by either party, the maximum hourly fees shall be the greater of (3) $2,500 in addition to # (1) or (4) the amount of hourly fees assessed against the opposing party. It is anticipated that the retainer will be replenished as amounts are used.

(underlined portions indicate handwritten insertions). The fee dispute committee made the following findings with regard to the fee agreement:

5) On October 17, 1998 Mr. Cotton and Ms. McCulloh entered into a fee agreement. Said fee agreement encompassed "Divorce—Domestic Relations—Torts occurring during marriage[."]

6) The agreement set forth caps for hourly rates on the principal case, the appeal, as well as a contingency agreement.

7) The agreement set forth a $15,000.00 cap on Mr. Cotton[']s hourly fee for the principal case. A contingency was in the contract that a larger fee would be available to Mr. Cotton if the court ordered attorney['s] fee[ ]s in excess of the $15,000.00 cap. The agreement also set forth a[n] additional $2,500.00 cap on hourly fees if the case was appealed. A contingency was in the contract that a larger fee would be available to Mr. Cotton if the court ordered attorney['s] fee[ ]s in excess of the 2,500.00 cap.

* * *

32) No additional attorney's fees were awarded by the District Court in the divorce action.

* * *

34) No attorney's fee was awarded in the appeal of the divorce action by the Wyoming Supreme Court.

35) The total fees available for the "Divorce—Domestic Relations" action and the "Divorce—Domestic Relations" appeal pursuant to the written agreement dated October 17, 1998 is $17,500.00 plus costs.

[¶ 26] Mr. Cotton argues the fee cap should not have been enforced for two reasons: 1) the district court awarded attorney's fees to Ms. McCulloh; and 2) the parties agreed to waive the cap by their course of conduct. We will examine each of his arguments in turn.

[¶ 27] Mr. Cotton claims the fee dispute committee incorrectly concluded the district court did not award attorney's fees to Ms. McCulloh in the divorce proceeding. He maintains that the district court's interim

order awarding Ms. McCulloh $50,000 in February 1999 amounted to an award of attorney's fees. The district court's Interim Stipulated Order of Distribution stated, in pertinent part:

1. The Court will not decide the Motion for Attorneys Fees at this time, but will consider requests for attorney fees at the time of the Hearing scheduled in this matter;

2. In accordance with the suggestion of the Court, the Defendant agrees to and shall, by February 12, 1999, or sooner if possible, pay $50,000 to the Clerk of the Fourth Judicial District Court of Sheridan County, Wyoming for payment to the Plaintiff and her attorney, C. John Cotton;

3. The Plaintiff is under no obligations or restrictions with regard to how the $50,000.00 distribution is to be spent. However, Plaintiff shall keep a detailed accounting of any and all expenditures from said distribution, and provide Defendant with a report of the accounting upon request. Defendant shall likewise keep an accounting of expenditures, and provide Plaintiff with a report of the same upon request.

[4]. The distribution previously set forth shall be taken into account by the Court at the time of the ultimate property distribution in this case[.]

[¶ 28] Mr. Cotton claims the following evidence supports his contention that the district court awarded him attorney's fees: 1) he filed motions on behalf of Ms. McCulloh requesting an award of attorney's fees from Mr. Drake; 2) Mr. Drake wrote "Legal Fees Plaintiff" on the memo line of the $50,000 check; and 3) the district court's decision letter and order in the divorce proceeding indicated that the property distribution included a consideration of Ms. McCulloh's request for costs and attorney's fees.

[¶ 29] We conclude substantial evidence supported the fee dispute committee's determination that the district court did not order Mr. Drake to pay a specific attorney's fees award to Ms. McCulloh. Contrary to the notation placed on the memo line of Mr. Drake's check, the district court's order very clearly stated the interim distribution was not an award of attorney's fees pursuant to Ms. McCulloh's motion for fees and Ms. McCulloh was free to use the funds in any manner she wished. The district court's order explained that it was simply approving a stipulated agreement between the parties that Mr. Drake would distribute $50,000 to Ms. McCulloh prior to the final divorce decree. Furthermore, the district court's decision letter in the divorce proceeding clearly provided that, although the district court took Ms. McCulloh's need for costs and attorney's fees into account in making the property distribution, each party was responsible for his or her own attorney's fees.

[¶ 30] Mr. Cotton's claim that the district court's order included a specific award of attorney's fees from Mr. Drake completely disregards the procedure employed by district courts in making such awards. Under the American system, when a party is entitled to an attorney's fees award from his opponent, he must submit his request to the court for a determination of whether his attorney's fees are reasonable. *See* Wyo. Stat. Ann. § 1–14–126(b) (Lexis-Nexis 2005),[5] *Cline v. Rocky Mountain, Inc.,*

5. Section 1–14–126. Costs in discretion of court.
 * * *
 (b) In civil actions for which an award of attorney's fees is authorized, the court in its discretion may award reasonable attorney's fees to the prevailing party without requiring expert testimony. In exercising its discretion the court may consider the following factors:
 (i) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (ii) The likelihood that the acceptance of the particular employment precluded other employment by the lawyer;
 (iii) The fee customarily charged in the locality for similar legal services;
 (iv) The amount involved and the results obtained;
 (v) The time limitations imposed by the client or by the circumstances;
 (vi) The nature and length of the professional relationship with the client;
 (vii) The experience, reputation and ability of the lawyer or lawyers performing the services; and
 (viii) Whether the fee is fixed or contingent.

998 P.2d 946, 951 (Wyo.2000) (applying the federal lodestar method to determine a reasonable attorney's fees award). This procedure is required in awarding attorney's fees under § 20–2–111, as well. *See e.g., Black v. De Black*, 1 P.3d 1244 (Wyo.2000). In this case, the district court did not make a determination on the reasonableness of Ms. McCulloh's request for attorney's fees. Instead, the record is clear that the district court simply confirmed an agreement between the parties which required Mr. Drake to make a property distribution to Ms. McCulloh to sustain her while she was litigating the divorce. The record contains substantial evidence to support the fee dispute committee's finding that the district court did not award attorney's fees to Ms. McCulloh.

[¶ 31] In the alternative, Mr. Cotton argues the parties agreed to treat the $50,000 as an award of fees, thereby modifying the terms of the representation agreement. He relies upon a footnote in *Schuler v. Community First National Bank*, 999 P.2d 1303 (Wyo.2000), in support of his argument. That footnote states:

As a general rule, if the parties mutually adopt a mode of performing their contract differing from its strict terms or if they mutually relax the contract's terms by adopting a loose mode of executing them, neither party can go back upon the past and insist upon a breach because the contract was not fulfilled according to its letter. *Quin Blair Enterprises, Inc. v. Julien Constr. Co.*, 597 P.2d 945, 951 n. 6 (Wyo.1979).

*Id.* at 1305, n. 1.

[¶ 32] Mr. Cotton presented this argument to the fee dispute committee, but the fee dispute committee obviously did not accept it since they calculated his fees according to the terms of the fee agreement. There is substantial evidence to support the fee dispute committee's determination. The legal principle which Mr. Cotton relies upon requires a *mutual* agreement by the parties to perform the contract in a manner differing from its actual terms. A unilateral disregard of the terms of the contract will not vary the requirements of the contract. *Quin Blair*

*Enterprises, Inc. v. Julien Const. Co.*, 597 P.2d 945, 951, n. 6 (Wyo.1979).

[¶ 33] Mr. Cotton claims Ms. McCulloh agreed to disburse a large portion of the $50,000 interim award to him as fees. In support of his position, Mr. Cotton relies upon statements Ms. McCulloh made in her February 1, 2000, letter to the executive director of the Wyoming State Bar, which she read to Mr. Cotton over the telephone. The statement Mr. Cotton primarily relied upon read: "Since I have already paid more than my contract states that I have to pay, I think it is obvious I have not kept the cap and am not going to let Mr. Cotton go unpaid." Mr. Cotton characterizes this statement as an admission by Ms. McCulloh that she agreed to waive the fee cap. He also claims, because she admitted she received his bills, she acquiesced to his use of the interim award for fee payments above the cap in the representation agreement.

[¶ 34] The fee dispute committee obviously did not agree with Mr. Cotton's explanation of the evidence and the record supports its conclusion. First of all, Ms. McCulloh's statement must be read in the context of the entire letter, the on-going litigation between Ms. McCulloh and her ex-husband, and the business relationship between Ms. McCulloh and Mr. Cotton. On February 1, 2000, the parties were engaged in the appeal of the initial divorce decree, anticipating receipt of the $200,000 property distribution from Mr. Drake, and already involved in an action for modification of the original decree. Mr. Cotton and Ms. McCulloh disagreed about how the property award should be distributed. Mr. Cotton wanted the check made payable jointly to him and Ms. McCulloh, and she wanted it made out only to her. The parties had a discussion about this matter and that discussion precipitated Ms. McCulloh's letter to the state bar. The paragraph containing the statement relied upon by Mr. Cotton, read in its entirety:

I need to make it clear that I have no other representation and I am afraid that Mr. Cotton's actions today, and the actions he is contemplating, will hurt my case very much. Mr. Cotton is the only person I have to represent me and protect my

rights, so this misunderstanding and the timing of his insistence on putting his name on my property settlement is extremely unfortunate. I do not want Mr. Cotton to resign, but at the same time, I need to know that I am not going to be taken advantage of on fees. I am enclosing the initial contract that I signed with Mr. Cotton. This contract specifically puts a cap on his fees at $17,500.00. Since I have already paid more than my contract states that I have to pay, I think it is obvious that I have not kept the cap and am not going to let Mr. Cotton go unpaid. I think, though that there can be legitimate differences of opinions on how much more I should pay him. All I know is I want him to finish the appeal and the current motions before the court.

[¶ 35] Ms. McCulloh's statement was simply a rendition of how she believed Mr. Cotton had treated the interim award. The context of the statement makes it clear she did not necessarily agree with his actions. In fact, she was concerned that he would treat the property distribution in the same manner as he had treated the interim award. Moreover, Ms. McCulloh's statement was made after Mr. Cotton had already unilaterally taken a significant portion of the interim award as payment for his fees. The statement certainly does not evince a *mutual agreement* to alter the terms of their initial fee agreement.

[¶ 36] The testimony at the hearing before the fee dispute committee also supports Ms. McCulloh's contention that she did not agree to waive the fee cap. She testified that, shortly after the trial in 1999, she told Mr. Cotton she did not agree with how he had disbursed the $50,000 interim award. Her concerns were not alleviated and, in January 2000, she met with another attorney, Tim Newcomb, to discuss the possibility of having him represent her in the appeal of the divorce decree.[6] Mr. Newcomb testified Ms. McCulloh was distraught about Mr. Cotton charging more than the hourly fee cap allowed. Mr. Newcomb told Ms. McCulloh

that it was probably just a misunderstanding and she should try to work out her differences with Mr. Cotton. Very shortly after her conversation with Mr. Newcomb, Ms. McCulloh drafted the February 1, 2000, letter to the state bar and read it to Mr. Cotton over the telephone. After that, she again visited with Mr. Newcomb and told him Mr. Cotton had said he was billing her for all the hours he worked on the case only so he would have a basis for a future motion to require Mr. Drake to pay her attorney's fees.

[¶ 37] Other witnesses, including Ms. McCulloh's sister and a friend, testified Ms. McCulloh indicated to them she believed Mr. Cotton's hourly fees were subject to the cap included in the representation agreement and she was concerned he was charging fees in excess of the cap. Consequently, there is substantial evidence in the record to support the fee dispute committee's decision that the fee cap was applicable to the divorce and initial appeal and the parties' conduct did not modify the terms of the representation agreement.

[¶ 38] Our decision that the parties did not mutually agree to alter the terms of the fee agreement also decides Mr. Cotton's claims that Ms. McCulloh is barred by principles of estoppel and laches from arguing the fee cap should apply. As detailed above, the evidence presented at the hearing effectively established that Ms. McCulloh did not take inconsistent positions and was not dilatory in asserting her claim that the hourly fee cap was applicable.

### C. Findings of Fact

 [¶ 39] Mr. Cotton also claims the fee dispute committee's decision should be reversed because it failed to make proper findings of fact and conclusions of law. As we recognized in our discussion of the standard of review, the Wyoming Administrative Procedures Act does not apply directly to the fee dispute process. However, in order to apply the standard of review applicable to agency decisions, we require appropriate findings of fact and conclusions of law from

---

**6.** Mr. Newcomb ultimately agreed to assist Mr. Cotton with the appeal, and Ms. McCulloh paid him $1,000 for his services.

the fee dispute committee. We, therefore, analogize to cases which involve review of administrative actions to determine whether the fee dispute committee's findings of fact and conclusions of law are adequate.

[¶ 40] In *Newman*, ¶ 23, 49 P.3d at 172, we ruled an agency's decision may be deemed arbitrary or capricious if it "failed to provide findings of fact or conclusions of law." We explained the agency's obligation in *Veile v. Bryant*, 2004 WY 107, ¶ 22, 97 P.3d 787, 797 (Wyo.2004), which quoted *State ex rel. Dep't of Transportation v. Legarda*, 2003 WY 130, ¶ 13, 77 P.3d 708, 713 (Wyo. 2003):

> "[T]he agency must "make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based." *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, 446 P.2d 550, 555 (Wyo.1968). This Court needs to know "why" an agency decided the way it did. When an agency does not make adequate findings of basic fact, we do not have a rational basis upon which to review its ultimate findings and conclusions."

> *Scott v. McTiernan*, 974 P.2d 966, 969 (Wyo.1999) (citations omitted); see also *Mayland v. Flitner*, 2001 WY 69, ¶ 13, 28 P.3d 838, ¶ 13 (Wyo.2001). It is insufficient for an administrative agency to state only an ultimate fact or conclusion. Each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis the ultimate fact or conclusion was reached. *Billings v. Wyoming Board of Outfitters and Guides*, 2001 WY 81, ¶ 13, 30 P.3d 557, ¶ 13 (Wyo. 2001). When an agency does not set forth the reasons for its actions—that is, when its findings are conclusory—this Court cannot uphold its decision. *Juroszek v. City of Sheridan Board of Adjustment*, 948 P.2d 1370, 1373 (Wyo.1997); *Basin Electric Power Cooperative, Inc. v. Department of Revenue, State of Wyoming*, 970 P.2d 841, 854 (Wyo.1998)."

[¶ 41] The fee dispute committee's decision in this case cannot be characterized as arbitrary or capricious for failing to make adequate findings of fact and conclusions of law. The fee dispute committee carefully reviewed the evidence and detailed its reasoning in extensive findings of fact and conclusions of law which were incorporated into the resolution order. The fee dispute committee's findings of basic fact properly explained the rationale supporting its ultimate factual findings and conclusions of law. We find no error in the procedure the fee dispute committee used to articulate its decision.

[¶ 42] Affirmed.